# Exhibit 3

 

February 17, 2026

**VIA CERTIFIED U.S. MAIL**
Office of the General Counsel
U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528-0485

Re:    *Touhy* Demand
       Investigation into the January 24, 2026, Death of Alex Jeffrey Pretti

Dear Sir or Madam,

On January 24, 2026, Customs and Border Patrol agents shot and killed Hennepin County resident Alex Jeffrey Pretti on a public street in downtown Minneapolis. Mr. Pretti's killing occurred only 17 days after federal agents shot and killed Hennepin County resident Renee Good in her car. And like the Good shooting, Mr. Pretti's shooting was captured on video by multiple bystanders for Minnesotans—indeed all Americans—to see.

As is standard practice in officer-involved shootings—including incidents involving federal officers—the Minnesota Bureau of Criminal Apprehension (BCA) arrived promptly at the scene and attempted to investigate the incident alongside federal investigators. But federal agents blocked them from accessing the scene, gathering evidence, or interviewing witnesses, forcing the BCA to swiftly seek and secure a search warrant signed by a Hennepin County District Court Judge. Even after BCA agents returned to the scene of Mr. Pretti's killing and presented federal agents with the signed search warrant, they still were blocked from accessing the scene (despite it being a public street within the County) or from gathering any evidence or conducting routine investigatory actions. This is unprecedented. To this day, despite repeated efforts to engage with federal agencies, the BCA has been unable to access critical information about Mr. Pretti's death that is in the exclusive custody of the federal government.

Minnesota is a sovereign State with the duty to investigate potential crimes committed within its borders.  That duty is at its height in cases—like this one—involving the loss of life of one if its citizens within its borders. Here, the BCA is generally responsible for conducting officer-involved death investigations in Minnesota. Similarly, the Hennepin County Attorney's Office (the County) has jurisdiction to investigate and, if supported by the evidence, prosecute criminal matters related to this tragic incident. As a result, in furtherance of its duties to the citizens of the County, the County is currently conducting a criminal investigation into Mr. Pretti's death and the circumstances surrounding it, with support from the BCA and the Minnesota Attorney General's Office.

We write this letter pursuant to 6 CFR §§ 5.41 et seq. and 19 C.F.R. §103.21 et seq., to formally demand production of information, documents, and physical items.[1] We ask that the U.S. Department of Homeland Security (DHS), and all of its respective subcomponents, provide the material described in Attachment A to this letter for a state-level criminal investigation in regard to the death of Alex Jeffrey Pretti on January 24, 2026. We ask for a response to this request by March 3, 2026. Below, as required by Department regulations, we provide a summary of the evidence sought and its relevance to the proceeding. We also explain the core principles of federalism that vest the State and its instrumentalities with a constitutional interest in the requested evidence.

But at the outset, it bears emphasis: This demand should not even be necessary. The federal government's blanket refusal to cooperate with Minnesota law enforcement is unmatched in our entire history working with the federal government.  Indeed, under the applicable regulatory structure for DHS, "[n]othing in this subpart affects the disclosure of official information to … federal, state, local, or foreign prosecuting and law enforcement authorities in conjunction with criminal law enforcement investigations, prosecutions, or other proceedings … ."  6 C.F.R. §5.41(i). Likewise, the regulatory structure for Customs and Border Protection, states "[n]othing in this subpart is intended to impede the appropriate disclosure of information by CBP to federal, state, local, and foreign law enforcement." 19 C.F.R. §103.21(e).  We trust that the government will reverse course and promptly respond to this demand.

**Background On Investigation Into the Death of Alex Jeffrey Pretti**

Federal agents shot and killed Alex Jeffrey Pretti on January 24, 2026, in Minneapolis, Hennepin County, Minnesota.  The U.S. Department of Justice has indicated that it has opened a federal civil rights investigation into the incident. But the State of Minnesota, together with its agencies and divisions, has an independent sovereign prerogative and responsibility to investigate possible violations of its criminal laws within its territory. The investigation of the death of a citizen is typically conducted by state and local authorities and only occasionally by the federal government.

Consistent with that sovereign responsibility, Minnesota officials are conducting an investigation into the death of Mr. Pretti on a Minneapolis public street. The BCA's investigation is impartial and includes no recommendation as to a charging decision. The County's investigation is likewise impartial, and the HCAO has reached no conclusion as to whether a violation of law has occurred. The HCAO will review the full investigation once it is complete and will consider all possible offenses, including but are not limited to, murder, manslaughter, and failure to render aid. The BCA and the County are committed to ensuring that a full and fair investigation is conducted at a local level based on all available evidence, whether inculpatory or exculpatory. Indeed, it is worth

---

[1] We have sent a similar demand letter to the U.S. Department of Justice for evidence in their possession, custody, and control.  Setting forth our requests for evidence in a letter-demand comports with 6 CFR §§ 5.41 et seq. and 19 C.F.R. §103.21 et seq., and with state and local procedure, which does not utilize grand juries with the same regularity as in the federal system as a means to obtain documentary and physical evidence.

noting that a Minnesota court already has found probable cause to issue a search warrant for evidence at the scene of Mr. Pretti's death.

The BCA and the County are discharging their responsibilities under Minnesota law. For instance, Minnesota law requires an independent investigation for any Minnesota Peace officer-involved death.  Minn. Stat. § 626.5534. An independent investigation is also authorized for deaths involving federal officers who were not designated as Minnesota Peace officers.  *See* Minn. Stat. § 299C.03; Minn. Stat § 390.11. Public transparency is vitally important in these cases—not just for the people of Hennepin County and Minnesota, but for the public nationwide. The only way to achieve transparency is thorough investigation conducted at a local level, and for the BCA and the County to review all the evidence—including evidence currently in possession of federal authorities. The County can then exercise its authority to determine if a crime was committed.

**Unexplained and Unjustified Deviation From Longstanding Practice of Joint Investigations**

The manner in which the scene was handled—and the fact that state officials were barred from entering, even after obtaining a judicially signed search warrant—has necessitated our current demand for evidence. Joint federal and state investigations of incidents of this type have been standard operating procedure in Minnesota for years—collaboration and evidence-sharing between federal and local officials when there are overlapping interests in investigating incidents of violence.

Indeed, two high-profile examples of this collaboration have occurred in Hennepin County within the last 12 months—namely, the murder and attempted murder of Minnesota lawmakers and their family members and a mass shooting at a church service.  Following both of those incidents, state and federal officials worked together to ensure that a thorough investigation occurred.  Concurrent state and federal investigations have also been the widespread historical practice in federal officer-involved shootings.  This method of joint investigation allows the federal investigators to conduct their important work, while at the same time allowing the BCA and the County to do the work that the people of Minnesota require of them.

On the morning of January 24, 2026, BCA investigators arrived at the scene of a federal-officer-involved shooting reasonably expecting that this longstanding practice of joint investigations would be followed in this case. Rather than working in cooperation with their federal counterparts, as they typically would, BCA investigators were rebuffed and wholly denied access to a Hennepin County public street where they enjoyed a lawful right to be present. As a result, important pieces of evidence were taken into the exclusive possession and control of federal investigators before the BCA had any opportunity even to examine and photograph them. The BCA was excluded from interviews, prevented from following standard investigative procedures, and blocked from access to important physical evidence.

Despite these challenges, the BCA continued to press for a return to the well-established norm of cooperation. Approximately ten days ago, your office and the FBI reached out to the BCA to indicate an intent to resume normal cooperation, including evidence-sharing and the potential for a joint investigation. That progress unraveled when the Department of Justice dispatched a representative from Main Justice to Minneapolis, after which the contemplated cooperation did

3

not materialize. On Friday, February 13, 2026, the FBI formally notified the BCA that it will not provide the BCA with access to any information or evidence related to the death of Mr. Pretti.

**The State's Core Sovereign Interest**

This request for evidence for use in a state criminal investigation is supported by the State's core sovereign interest in exercising its police powers and in investigating possible violations of state law, as enshrined in the Tenth Amendment of the U.S. Constitution and longstanding principles of federalism going back to our Founding. This interest is particularly acute here, where state law enforcement was thwarted in its attempt to swiftly gather evidence in a public setting according to standard investigatory protocols by the federal government, which prevented state investigators from accessing the scene of an officer-involved shooting. This core sovereign interest creates a compelling need for the evidence sought herein.  Conversely, federal withholding of the requested evidence, in an apparent effort to shield one or more federal officers from scrutiny following the death of a Minnesota citizen, flatly contravenes core principles of federalism.

All of the information set forth in Attachment A bears on the pending investigation and will directly assist us in completing a comprehensive review, regardless of the outcome. For example, physical evidence from the scene, including the firearms used in the shooting, will assist in reconstructing the incident. Audiovisual evidence (including contemporaneous statements by the involved federal officers), government reports, witness accounts and communications, and medical reports will assist in establishing the sequence of events and shed light on the officers' states of mind. And operations plans and employment and training records are relevant to discerning the officers' preparation, knowledge of use-of-force policies, and any prior performance or disciplinary history that may have informed their states of mind on January 24, 2026, as well as to assessing the objective reasonableness of the use of force.

At the same time, releasing this information will not cause harm to the federal government, witnesses, or others. As explained above, federal/state cooperation is the norm—even in complex, high-profile, and sensitive cases, and Minnesota's law enforcement generally, and the BCA specifically, has always maintained a productive and cooperative working relationship with our federal counterparts. And as always, we stand willing to work with federal authorities to protect any sensitive investigative techniques or procedures that our requests may inadvertently implicate. Moreover, to the extent that our requests do implicate information protected by the law enforcement privilege, this is a case where the administration of justice requires disclosure, in light of compelling state interests in investigating this matter and the seriousness of the potential offenses at stake.

Moreover, state and local investigators conduct secure and appropriate investigations into serious incidents every day. They maintain appropriate protections, follow procedures for chain of custody, and otherwise preserve evidence for later use. In addition, the Minnesota Government Data Practices Act classifies data related to open investigations as non-public. Minn. Stat. § 13.82, Subd. 7. This Act also creates procedures to protect witnesses who have legitimate fear for their safety and other protections that will ensure no negative result for the federal government in turning over the information requested in this letter.

This matter has attracted significant ongoing public attention. The public—not just in Minnesota but nationwide—deserves a prompt resolution to our pending investigation, in the interests of the orderly and impartial administration of justice and in ensuring public faith in the same. This prompt resolution depends on the Department's prompt compliance with our demand for evidence. Such compliance will not in any way hamper the performance of the Department's mission, as there is no conflict between the state's exercise of its lawful authority to investigate homicide deaths within its borders and the faithful enforcement of federal immigration and criminal laws.

**Request for Expedited Consideration**

This request is extraordinarily time sensitive. The materials sought are needed to support investigative steps that are presently underway, and delay in obtaining them may materially affect the direction, scope, and timing of the investigation. It is the policy and practice of the BCA, wherever feasible, to complete use-of-force investigations within 60 days. This is in part because the passage of time can result in dissipation and deterioration of evidence. Most obviously, witness memories fade. Prompt access to federal law enforcement witnesses is essential to ensuring that evidence is not lost due to the effects of fading memories, external factors influencing recollection, or witnesses becoming unavailable.

Prompt access to documentary and physical evidence is equally important for the same reason. Investigators must be able to review contemporaneous records and tangible materials in order to conduct thorough and informed interviews of other witnesses, including non-federal witnesses. Without access to those materials, investigators may be unable to ask complete or properly contextualized questions while memories remain fresh, increasing the risk that relevant information will be overlooked or irretrievably lost. Delays in access to such evidence thus compound the risk of evidentiary dissipation by impairing the effectiveness of witness interviews as well as the preservation of documentary and physical proof.

The physical evidence sought is also subject to the risk of deterioration, amplifying our need for swift access. For example, if not stored properly, biological evidence and other forensic evidence will deteriorate beyond testing capabilities. This risk is exacerbated by the manner in which federal authorities have been collecting and maintaining evidence in this and other recent ICE-involved shooting incidents. For example, it appears from publicly available sources that federal authorities handled Mr. Pretti's firearm in a manner that substantially deviated from normal evidentiary protocols, creating issues with forensic testing and chain of custody. State investigators would have completed 3D scans of the entire incident scene, conducted detailed analysis of trajectory, and obtained precise measurements of the location of key evidence (such as discharged cartridge casings and vehicles). Instead, federal investigators conducted a rushed analysis of the incident scene and then removed key physical evidence before local investigators could conduct their normal work.

Prompt disclosure of the requested evidence is also important to ensure compliance with United States and Minnesota law. These include the rights of the accused to due process under the Fifth Amendment of the United States Constitution and to be charged within three years for most relevant felonies, other than those resulting in death, under Minnesota law; as well as the rights of

crime victims under Minnesota law to notice, participation, a speedy trial, and restitution should a prosecution result.  Minn. Stat. §§ 611A.01, 611A.02, 611A.033.

We acknowledge the federal government's prior denial of BCA's request for evidence in this matter, which we understand to have been final.  We nonetheless submit this demand to ensure all avenues are explored. Should the government wish to reverse its prior determination, we remain available to engage immediately on prioritizing categories of information, if helpful, to facilitate prompt processing, and to discuss the practicalities of the transfer of evidence to preserve chain of custody.

But at minimum, given the exigencies of the situation, we request a response by **March 3, 2026,** indicating whether the government will reverse its previous denial. If we don't hear from the government by that date, we will have no other choice but to consider all avenues for legal relief.

* * *

On January 24, 2026, a man was shot and killed in Hennepin County.  Minnesota officials must conduct a full and transparent investigation into this death.  We ask that the federal government provide the information necessary for us to complete this important investigation.

Thank you,

/s/ Mary Moriarty                                     /s/ Drew Evans

Mary F. Moriarty                                      Drew Evans
Hennepin County Attorney                              BCA Superintendent

**CC (with enclosure) via Electronic Mail to:**
- Office of the General Counsel, U.S. Department of Homeland Security, OGC@hq.dhs.gov
- Brett Shumate, U.S. Department of Justice, Civil Division, Assistant Attorney General
- Eric J. Hamilton, U.S. Department of Justice, Civil Division, Deputy Assistant Attorney General
- Alex Haas, Civil Division, Federal Programs Branch, Director
- Jacqueline Snead, Civil Division, Federal Programs Branch, Assistant Director

**CC (with attachment) via Certified Mail**:
General Counsel
Immigration, Customs, and Enforcement
Minnesota Field Office
1 Federal Drive, Suite 1601
Fort Snelling, MN  55111

General Counsel
Homeland Security Investigations
Minnesota Field Office
1 Federal Drive, Suite 1340
Fort Snelling, MN  55111

Chief Counsel
U.S. Customs and Border Protection
Minnesota Field Office
5600 W American Blvd. Suite 760
Bloomington, MN  55437

Daniel Rosen
U.S. Attorney for the District of Minnesota
U.S. Department of Justice
300 S 4th Street, Suite 600
Minneapolis, MN  55415

 

**Attachment A**

1. Any and all physical evidence relevant to the January 24, 2026, shooting of Alex Jeffrey Pretti on Nicolett Avenue in Minneapolis, Minnesota (the "January 24 shooting"). This evidence includes, but is not limited to, physical evidence located and/or recovered from the scene of the shooting, such as: discharged cartridge casings; any and all firearms; material collected for, and reports related to, any and all ballistics testing; material collected for, and reports related to, any and all forensics testing; and any other item collected on the scene. This evidence further includes, but is not limited to, uniforms for any and all federal agents and officers, and any tools, weapons, and weapon holsters carried by or on the person of any and all federal agents and officers, who were involved in the shooting, who interacted with Mr. Pretti, or who were present on the scene at any time on January 24, 2026. We also request a chain of custody for any and all such evidence.

2. Any and all communications devices and computing devices, including but not limited to cellular phones, computers, and GPS devices, used by any and all federal agents and officers involved in the January 24 shooting, who interacted with Mr. Pretti, or who were present on the scene at any time on January 24, 2026. We also request a chain of custody for any and all such evidence.

3. Any and all photographs, videos, measurements, and other imaging relevant to the January 24 shooting. This evidence includes, but is not limited to, material that was recorded by any federal evidence response team; any other federal agents, officers, and investigators; and material recorded by members of the public that was obtained by any federal agent, officer, or investigator. It includes, but is not limited to, photographs and videos from official and personal devices, networks, and systems. It also includes any dashboard camera or body camera footage, as well as the devices used to make such recordings and the charging stations for those devices.

4. Any and all radio communications from 8:00 a.m. through 5:00 p.m. Central time on January 24, 2026, including, but not limited to, any and all dispatch calls and radio traffic.

5. Any and all immigration and federal law-enforcement reports related to the January 24 shooting, including but not limited to: incident reports; use-of-force reports, including those concerning individuals at the scene of the shooting other than Mr. Pretti; injury reports; weapons logs showing the weapons assigned to or used by any and all federal agents and officers at the scene; weapons discharge reports, including for firearms and chemical weapons, for weapons assigned to or used by any and all federal agents and officers at the scene of the shooting; investigative assessments, openings, or closing and related communications; after-action reports and memoranda; and any and all reports concerning the detention, questioning,

or arrest of individuals who were at or near the scene of the January 24 shooting, including documentation of the purpose and legal basis for transporting any individual away from the scene and information about the location to which they were transferred.

6.  Any and all personnel and assignment logs listing the federal agents and officers on duty on January 24, 2026, in Minneapolis, Hennepin County, Minnesota, and/or who were involved in the January 24 shooting, or were at the scene of the shooting at any point.  Such material should include, but is not limited to, the names, personnel and badge numbers, assignment location, and designated role or task for any and all such federal agents and officers.

7.  Any and all travel and assignment logs showing the subsequent assignment or reassignment of any federal agents and officers involved in the January 24 shooting, including, but not limited to, documentation of any assignments to locations outside Hennepin County, Minnesota, following the January 24 shooting.

8.  Access to interview federal agents and officers on duty on January 24, 2026, in Minneapolis, Hennepin County, Minnesota, and/or who were involved in the January 24 shooting, or were at the scene of the shooting at any point that day.

9.  Any and all communications from witnesses pertaining to the January 24 shooting and to the circumstances surrounding that shooting, including, but not limited to: statements to, from, or among federal agents and officers regarding the shooting, the circumstances of the shooting, or responding to, processing, or investigating the shooting; statements to or from state or local law enforcement officers regarding the shooting; statements to, from, or among first responders, including fire, EMS, and other medical responders; and statements to or from civilian witnesses.  These items may take the form of written statements, emails, video or audio recordings, text messages, and messages on Signal, WhatsApp, Teams, or other platforms.

10. Any and all operation plans that cover or pertain to January 24, 2026, in Minneapolis, Hennepin County, Minnesota, or that relate to any and all federal agents and officers who interacted with Mr. Pretti on January 24, 2026, or who were involved in the January 24 shooting.

11. Any and all policies, regulations, procedures, and briefings in place on January 24, 2026, that pertain to: use of force and tactics; firearms, chemical weapons, and other weapons use; de-escalation and risk mitigation; responding to protests or civil disobedience; incident and use-of-force reporting; evidence handling and processing; and any duty to or procedures for securing or providing medical assistance or treatment.

12. Any and all training materials for federal agents and officers involved in the January 24 shooting, who were present on the scene of the January 24 shooting at any time that day, or who interacted with Mr. Pretti on January 24, 2026.  These materials should include, but are not limited to: records related to classroom instruction, hands-on training, and scenario-based training; academy training, follow-up and refresher trainings; and any training or study at the Federal Law Enforcement Training Centers (FLETC).

13. The following material from the personnel files for the federal agents and officers involved in the January 24 shooting, who were present on the scene of the January 24 shooting at any point that day, or who interacted with Mr. Pretti on January 24, 2026: records of commendations, awards, promotions, complaints, demotions, disciplinary warnings and actions; records from administrative or internal affairs investigations, including any resulting conclusions and employment actions; incident and use-of-force reports related to prior uses of force; reports on or documentation of any and all prior weapons discharges, and any related disciplinary or remedial action.

14. Any and all documentation related to any interaction between Mr. Pretti and federal agents and officers that occurred at any time prior to the January 24 shooting, including any interaction on January 13, 2026.  These materials should include, but are not limited to, reports, logs, video recordings, audio recordings, photographs, notes, communications in any format, and radio traffic.

15. Any and all documentation related to weapons qualification and re-qualification for federal agents and officers involved in the January 24 shooting, who were present on the scene of the January 24 shooting, or who interacted with Mr. Pretti on January 24, 2026.

16. Any and all reports of medical assessment, diagnosis, and treatment for any person, including any civilian or any federal agent or officer, who reported, was examined for, or was treated for injuries related to the January 24 shooting, whether that assessment, diagnosis, and treatment occurred at the scene of the shooting or elsewhere.