# Exhibit 11

*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
425 I Street, NW, Room 6100
Washington, DC 20536

U.S. Immigration and Customs Enforcement

June 4, 2026

Mary F. Moriarty
Hennepin County Attorney
A-1600 Government Center
300 South Sixth Street
Minneapolis, MN 55487

Re: Letter Request for Information Concerning Investigation into the January 14, 2026 shooting of Julio Cesar Sosa-Celis

Dear Ms. Moriarty:

Immigration and Customs Enforcement (ICE), a component of the U.S. Department of Homeland Security (DHS), received a copy of your request dated February 19, 2026 seeking records pertaining to your investigation of the January 14, 2026 shooting of Julio Cesar Sosa-Celis. The information you seek is not associated with an ongoing court action, so the DHS *Touhy* regulations, 6 C.F.R. §§5.41 et seq., do not apply.[1] Instead, ICE has processed your request as a discrete request for information shared between law enforcement agencies.[2] As discussed below, ICE declines your request.

As you know, law enforcement sharing requests are routine. Such requests may be made to ICE informally through established law enforcement sharing channels, pursuant to written information sharing and access agreements, pursuant to written requests for Privacy Act information in support of civil or criminal law enforcement activity under (b)(7) of the Privacy Act of 1974 (5 U.S.C. § 552a(b)(7)),[3] and pursuant to a routine use under (b)(3) of the Privacy Act of 1974 (5 U.S.C. § 552a(b)(3)).[4] Barring any applicable legal authorities, binding agreements, or any other mechanism

---

[1] The scope of the DHS *Touhy* regulations covers requests that are "in connection with federal or state litigation," and "the term 'litigation' encompasses all pre-trial, trial, and post-trial stages…before courts, commissions, boards…grand juries, or other judicial or quasi-judicial bodies or tribunals." *See generally* 6 C.F.R. § 5.41.

[2] Section 5.41(i) provides that "[n]othing in this subpart affects the disclosure of official information …to federal, state, local, or foreign prosecuting and law enforcement authorities in conjunction with criminal law enforcement investigations, prosecutions, or other proceedings, e.g., extradition, deportation." 6 C.F.R. § 5.41(i).

[3] Privacy Act-protected information may be disclosed to a domestic agency conducting a civil or criminal law enforcement investigation or activity authorized by law pursuant to section (b)(7) of the Privacy Act (5 U.S.C. § 552a(b)(7)). U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014) at 5.7. ICE employees have the authority to disclose the information but are not required to make such disclosures. U.S. Immigration and Customs Enforcement Privacy Guidance, *Requests for Information Under Section (b)(7) of the Privacy Act* (August 13, 2010).

[4] ICE employees may disclose information outside of DHS if authority exists from subsection (b) of the Privacy Act pursuant to written permission from the individual to whom the record pertains, as authorized by the Privacy Act itself in subsection (b), or pursuant to one of the Privacy Act "Routine Uses" in applicable Privacy Act System or Records Notices (SORN(s)). When disclosures are authorized by the Privacy Act, these disclosures are discretionary. *See*, U.S. Immigration and Customs Enforcement Directive No.

that compels ICE to share information (none of which are present here), ICE maintains discretion whether to decline a request for information.[5]

ICE evaluates each request individually and assesses whether it can provide responsive materials based on the specific information requested. ICE may decline law enforcement sharing requests that seek personal or sensitive information that may compromise officer safety or the integrity of an investigation.[6]

Specifically, you requested:

1. Any and all physical evidence relevant to the January 14, 2026, shooting of Julio Cesar Sosa-Celis in Minneapolis, Minnesota (the "January 14 shooting"). This evidence includes, but is not limited to, physical evidence located and/or recovered from the scene of the shooting or the pursuit leading up to the shooting, such as: discharged cartridge casings; any and all firearms; any physical objects used by any individuals involved in the incident; material collected for, and reports related to, any and all ballistics testing; material collected for, and reports related to, any and all forensics testing; motor vehicles and the contents thereof, including any GPS technologies; any other item collected on the scene; and any item related to the January 14 shooting collected pursuant to a search warrant. This evidence further includes, but is not limited to, uniforms for any and all federal agents and officers, and any tools, weapons, and weapon holsters carried by or on the person of any and all federal agents and officers, who were involved in the shooting or traffic stop and pursuit leading to the shooting, who interacted with Mr. Sosa-Celis, Alfredo Alejandro Aljorna, or Gabriel Alejandro Hernandez-Ledezma, or who were present on the scene of the shooting at any time on January 14, 2026. Further, you requested a chain of custody for any and all such evidence;
2. Any and all communications devices and computing devices, including but not limited to cellular phones, computers, and GPS devices, used by any and all federal agents and officers involved in the January 14 shooting or the traffic stop and pursuit leading to the shooting; who interacted with Mr. Sosa-Celis, Mr. Aljorna, or Mr. Hernandez-Ledezma on January 14, 2026; or who were present on the scene of the shooting at any time on January14, 2026. Further, you requested a chain of custody for any and all such evidence;

3. Any and all photographs, videos, measurements, and other imaging relevant to the January 14 shooting. This evidence includes, but is not limited to, material that was recorded by any federal evidence response team; any other federal agents, officers, and investigators; and material recorded by members of the public that was obtained by any federal agent, officer, or investigator. It includes, but is not limited to, photographs and

---

4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014) at 5.7. *See also*, *generally*, DHS Privacy Policy Directive No. 047-01-007, Revision 3, *Handbook for Safeguarding Sensitive PII* (December 4, 2017).

[5] *See generally*, U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014). *See also, generally*, DHS Privacy Policy Directive No. 047-01-007, Revision 3, *Handbook for Safeguarding Sensitive PII* (December 4, 2017) and U.S. Immigration and Customs Enforcement Privacy Guidance, *Requests for Information Under Section (b)(7) of the Privacy Act* (August 13, 2010).

[6] *See*, DHS Management Directive No. 11042.1, *Safeguarding Sensitive but Unclassified (For Official Use Only) Information* (January 6, 2005) and U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014) at 5.7.

videos from official and personal devices, networks, and systems. It also includes any dashboard camera or body camera footage, as well as the devices used to make such recordings and the charging stations for those devices;

4. Any and all radio communications from 4:00 p.m. Central time on January 14, 2026, through 1:00 a.m. Central time on January 15, 2026, including, but not limited to, any and all dispatch calls and radio traffic;

5. Any and all immigration and federal law-enforcement reports related to the January 14 shooting, including but not limited to: incident reports; use-of-force reports, including those concerning Mr. Sosa-Celis, Mr. Aljorna, Mr. Hernandez-Ledezma, or any other individual at the scene of the January 14 shooting; injury reports; arrest reports; property damage reports; weapons logs showing the weapons assigned to or used by any and all federal agents and officers involved in or at the scene of the January 14 shooting or the pursuit leading to the shooting; weapons discharge reports for weapons assigned to or used by any and all federal agents and officers involved in or at the scene of the January 14 shooting or the pursuit leading to the shooting; investigative assessments, openings, or closing and related communications; administrative warrants; maps, measurements, and diagrams of the January 14 shooting scene and any area related to any pursuit leading to the scene; affidavits drafted in connection with the January 14 shooting incident; judicial search warrants sought and/or executed related to the January 14 shooting incident, including any affidavits and search warrant return documents; after-action reports and memoranda; any and all reports concerning the detention, questioning, or arrest of individuals who were at or near the scene of the January 14 shooting; and any and all reports concerning the arrest and detention of Mr. Sosa-Celis, Mr. Aljorna, or Mr. Hernandez-Ledezma;

6. Any and all personnel and assignment logs listing the federal agents and officers on duty on January 14, 2026, in Minneapolis, Hennepin County, Minnesota, and/or who were involved in the January 14 shooting, were at the scene of the shooting at any point, or were involved in any traffic stop or pursuit leading up to the shooting. Such material should include, but is not limited to, the names, personnel and badge numbers, assignment location, and designated role or task for any and all such federal agents and officers;

7. Any and all travel and assignment logs showing the subsequent assignment or reassignment of any federal agents and officers involved in the January 14 shooting and any traffic stop or pursuit leading up to the shooting, including, but not limited to, documentation of any assignments to locations outside Hennepin County, Minnesota, following the January14 shooting;

8. Any and all communications from witnesses pertaining to the January 14 shooting and to the circumstances leading up to and surrounding that shooting, including, but not limited to: statements to, from, or among federal agents and officers regarding the shooting, the circumstances leading up to and surrounding the shooting, or responding to, processing, or investigating the shooting; statements to or from state or local law enforcement officers regarding the shooting; statements to, from, or among first responders, including

fire, EMS, and other medical responders; statements to or from civilian witnesses; and any statements by Mr. Sosa-Celis, Mr. Aljorna, or Mr. Hernandez-Ledezma. These items may take the form of written statements, emails, video or audio recordings, text messages, and messages on Signal, WhatsApp, Teams, or other platforms;

9. Any and all operation plans that cover or pertain to January 14, 2026, in Minneapolis, Hennepin County, Minnesota, including any plans involving traffic stops and any plans that relate to federal agents and officers involved in the January 14 shooting or who interacted with Mr. Sosa-Celis, Mr. Aljorna, or Mr. Hernandez-Ledezma on January 14, 2026;

10. Any and all policies, regulations, procedures, and briefings in place on January 14, 2026, that pertain to: use of force and tactics; firearms, chemical weapons, and other weapons use; traffic stops; pursuits; legal authority and tactical guidance for entry of homes or other private places; de-escalation and risk mitigation; incident and use-of-force reporting; evidence handling and processing; and any duty to or procedures for securing or providing medical assistance or treatment;

11. Any and all training materials for federal agents and officers involved in the January 14 shooting or the pursuit leading up to the shooting, who were present on the scene of the January 14 shooting at any time that day, or who interacted with Mr. Sosa-Celis, Mr. Aljorna, or Mr. Hernandez-Ledezma on January 14, 2026. These materials should include, but are not limited to: records related to classroom instruction, hands-on training, and scenario training; academy training, follow-up and refresher trainings; and any training or study at the Federal Law Enforcement Training Centers (FLETC);

12. The following material from the personnel files for the federal agents and officers involved in the January 14 shooting or the traffic stop or pursuit leading up to the shooting, who were present on the scene of the January 14 shooting at any point that day, or who interacted with Mr. Sosa-Celis, Mr. Aljorna, or Mr. Hernandez-Ledezma on January 14, 2026: records of commendations, awards, promotions, complaints, demotions, disciplinary warnings and actions; records from administrative or internal affairs investigations, including any resulting conclusions and employment actions; incident and use-of-force reports related to prior uses of force; reports on or documentation of any and all prior weapons discharges, and any related disciplinary or remedial action;

13. Any and all documentation related to any interaction between Mr. Sosa-Celis, Mr. Aljorna, or Mr. Hernandez-Ledezma and federal agents and officers at any time prior to the January 24 shooting. These materials should include, but are not limited to, reports, logs, video recordings, audio recordings, photographs, notes, communications in any format, and radio traffic;

14. Any and all documentation related to weapons qualification and re-qualification for federal agents and officers involved in the January 14 shooting or the pursuit leading up to the shooting, or who interacted with Mr. Sosa-Celis, Mr. Aljorna, or Mr. Hernandez-Ledezma on January 14, 2026; and

15. Any and all reports of medical assessment, diagnosis, and treatment for any person, including any civilian or any federal agent or officer, who reported, was examined for, or was treated for injuries related to the January 14 shooting, whether that assessment, diagnosis, and treatment occurred at the scene of the shooting or elsewhere.

After careful consideration of your request, ICE declines to share the requested information. Among other reasons, your requests may seek information protected from disclosure by statute or federal regulations.[7] For example, your request seeks personally identifying information of federal law enforcement officers, disclosure of which would jeopardize the safety and privacy of officers and other third parties.[8] Your request also seeks law-enforcement sensitive files, operational plans, logs, and reports, and interviews with ICE personnel without any identified scope or time limitations. This information (and information accessed through requested interviews) may not be disclosed as it pertains to open investigations and may reveal other sensitive operations.[9] This information is considered For Official Use Only[10]-Law Enforcement Sensitive,[11] and you have not established your need to know[12] the information requested.

Additionally, the information you seek likely includes third agency information subject to those agencies' policies and regulations concerning discussion and dissemination of the information.[13] The information may also contain deliberative process, attorney work product, and/or attorney client privileged information, as well as reports of investigations that contain third agency information and have additional dissemination and handling controls.[14]

Given the breadth and subject matter of your request, sharing of the information would compromise the mission of DHS, including by diverting agency resources, and would also potentially impede or prejudice ongoing law enforcement investigations.[15]

---

[7] *Id*.
[8] U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014) at 5.6. *See also*, DHS Management Directive No. 11042.1, *Safeguarding Sensitive but Unclassified (For Official Use Only) Information* (January 6, 2005).
[9] U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014) at 5.7.
[10] The term For Official Use Only means Sensitive But Unclassified information that may or may not be categorized by statute or regulation, the unauthorized disclosure of which could adversely impact a person's privacy or welfare, the conduct of federal programs, or other programs or operations essential to the national interest. U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014) at 3.3. *See also*, DHS Management Directive No. 11042.1, *Safeguarding Sensitive but Unclassified (For Official Use Only) Information* (January 6, 2005).
[11] Law Enforcement Sensitive information is a subset of For Official Use Only information that is compiled for law enforcement purposes and which the loss or misuse of, or unauthorized access to could adversely affect the national interest or the conduct of investigative work, disclose the identity of a confidential informant or source of information, endanger life or physical safety, or impact the privacy to which individuals are entitled under the Privacy Act or the DHS privacy policy. U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014).
[12] Need-to-know means that absent any compromise of the mission of DHS or ICE, or prohibition by law, policy, or established agreement, a determination made by an authorized holder of information that a prospective recipient requires access to specific information to perform or assist in a lawful and authorized government function. *Id*. at 3.12. *See also*, DHS Management Directive No. 11042.1, *Safeguarding Sensitive but Unclassified (For Official Use Only) Information* (January 6, 2005).
[13] U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014) at 5.6. *See also*, DHS Management Directive No. 11042.1, *Safeguarding Sensitive but Unclassified (For Official Use Only) Information* (January 6, 2005).
[14] U.S. Immigration and Customs Enforcement Directive No. 4003.2, *Safeguarding Law Enforcement Sensitive Information* (May 20, 2014) at 5.7.
[15] *Id.*

Thus, for the foregoing reasons, ICE declines to share the information you have requested.

Thank you,

SARA JAZAYERI Digitally signed by SARA JAZAYERI Date: 2026.06.04 23:35:08 -04'00'

Sara Jazayeri
Division Counsel
Government Information Law Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

CC: Office of the General Counsel
U.S. Department of Homeland Security
OGC@hq.dhs.gov

Jacqueline Coleman Snead
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch
Jacqueline.Snead@usdoj.gov

Sam Olson
Director
Immigration and Customs Enforcement
Minnesota Field Office
1 Federal Drive, Suite 1601
Fort Snelling, MN 55111

Howard Weisman
Section Chief
Immigration and Customs Enforcement
500 12th St. SW, Suite 1049
Mailstop 5099
Washington, DC 20536-5005

General Counsel
Immigration and Customs Enforcement
Minnesota Field Office
1 Federal Drive, Suite 1601
Fort Snelling, MN 55111

Chief Counsel
U.S. Customs and Border Protection
Minnesota Field Office
5600 W American Blvd., Suite 760

Bloomington, MN 55437

U.S. Attorney for the District of Minnesota,
U.S. Department of Justice
300 S 4th Street, Suite 600
Minneapolis, MN 55415