**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF MINNESOTA, *et al*.<br>*Plaintiffs*,<br>vs.<br>U.S. DEPARTMENT OF JUSTICE, *et al.*<br>*Defendants*. | Civil Action No. 1:26-cv-1007-EGS |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

# TABLE OF CONTENTS


INTRODUCTION ... 1

BACKGROUND ... 2

I. Regulatory Background ... 2

A. DOJ Regulations ... 2

B. DHS Regulations ... 4

C. CBP Regulations ... 5

II. Factual and Procedural Background ... 6

STANDARD OF REVIEW ... 9

ARGUMENT ... 9

I. Plaintiffs' Failure to Comply with Defendants' *Touhy* regulations Require that Their APA Claims Be Dismissed Because Discretionary Agency Action is Unreviewable ... 9

A. Plaintiffs' Did Not Comply with Defendants' *Touhy* Regulations ... 9

B. Plaintiffs' Claims Must Be Dismissed Because Each Request Letter Implicated Defendants' Discretionary Authority to Share Information With External Law Enforcement Organizations ... 12

II. Plaintiff's Tenth Amendment Claim to Entitlement to Federal Investigative Materials Fails Because the Tenth Amendment Only Retains Certain Powers to the States and Does Not Require Federal Agencies to Provide Investigative Materials to State Authorities. ... 13

III. This Case Should be Transferred to a Proper Venue ... 15

A. Transfer is Appropriate Because this Action Could Have Been Brought in the District of Minnesota. ... 15

B. The Interest of Justice and Convenience Factors Strongly Favor Transfer to the District of Minnesota. ... 16

CONCLUSION ... 17

**TABLE OF AUTHORITIES**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9, 12

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .......... 11

*Coll. Ret. Equities Fund v. Boeing Co.*,
No. 22-cv-3845, 2025 WL 1207313 (N.D. Ill. Apr. 25, 2025) .......... 16

*COMSAT Corp. v. Nat'l Sci. Found.*,
190 F. 3d 269 (4th Cir. 1999) .......... 11

*Dongguan Deego Trading Co. v. Junyao-US*,
No. 25-cv-4962, 2025 WL 2174325 (N.D. Ill. July 31, 2025) .......... 16

*Drake v. FAA*,
291 F.3d 59 (D.C. Cir. 2002) .......... 11

*Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*,
512 F. Supp. 2d 1169 (W.D. Wis. 2007) .......... 16

*Esposito v. Airbnb Action LLC*,
538 F. Supp. 3d 844 (N.D. Ill. 2020) .......... 17

*Est. of Pal v. Barcode Corp.*,
No. 19-109 (CKK), 2019 WL 4709902 (D.D.C. Sept. 26, 2019) .......... 2

*Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) .......... 14

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 11

*Hoffman v. Blaski*,
363 U.S. 335 (1960) .......... 15

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
928 F.3d 42 (D.C. Cir. 2019) .......... 9

*Liptak v. County*,
No. 16–225 (ADM/JSM), 2016 WL 5662082 (D. Minn. Aug. 24, 2016) .......................... 4, 5, 6

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ..................................................................................................... 11

*McCulloch v. Maryland*,
17 U.S. 316 (1819) ....................................................................................................... 14

*Mitchell v. Deutsche Bank Nat. Trust Co.*,
No. SACV 15-01307-CJC(JCGx), 2015 WL 12867746 (C.D. Cal. Oct. 29, 2015) ................. 17

*New York v. Tanella*,
374 F.3d 141 (2d Cir. 2004) .......................................................................................... 14

*New York v. United States*,
505 U.S. 144 (1992) ..................................................................................................... 13

*Patterson v. Kentucky*,
97 U.S. 501 (1878) ................................................................................................. 13, 14

*Rsch. Automation, Inc., v. Schrader-Bridgeport Intern., Inc.*,
626 F.3d 973 (7th Cir. 2010) ........................................................................................ 15

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ..................................................................................................... 15

*Smith v. Cromer*,
159 F.3d 875 (4th Cir. 1998) .................................................................................. 3, 5, 6

*Spence v. NCI Info. Sys., Inc.*,
530 F. Supp. 2d 739 (D. Md. 2008) ................................................................................ 11

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ................................................................................................. 15, 16

*Torres v. S.S. Rosario*,
125 F.Supp. 496 (S.D.N.Y. 1954) .................................................................................. 16

*Secretary of Labor v. Twentymile Coal Co.*,
456 F.3d 151, (D.C. Cir. 2006) ...................................................................................... 11

*Twin Metals Minn. LLC v. United States*,
No. 22-cv-2506, 2023 WL 5748624 (D.D.C. Sept. 6, 2023) .................................................. 9

*United States v. Bizzard*,
674 F.2d 1382 (11th Cir. 1982) .............................................................................. 4, 5, 6

*United States v. Marino*,
658 F.2d 1120 (6th Cir. 1981) .................... 2

*United States v. McLeod*,
385 F.2d 734 (5th Cir. 1967) .................... 14

*United States v. Morrison*,
529 U.S. 598 (2000).................... 13

*United States ex rel. Touhy v. Ragen*,
340 U.S. 462 (1951).................... 2

*United States v. Soriano-Jarquin*,
492 F.3d 495 (4th Cir. 2007) .................... 2

*United States v. Wallace*,
32 F.3d 921 (5th Cir. 1994) .................... 4, 5, 6

*United States v. Williams*,
170 F.3d. 431 (4th Cir. 1999) .................... 11

*Vital Pharms., Inc. v. Monster Energy Co.*,
No. 20-cv-1127, 2020 WL 6162796 (C.D. Cal. Aug. 27, 2020) .................... 17

*Vu v. Ortho-McNeil Pharm, Inc.*,
602 F. Supp. 2d 1151 (C.D. Cal. 2009) .................... 17

**Constitutions**

U.S. Const. amend. X.................... 13

U.S. Const. art. VI, cl. 2.................... 14

**Statutes**

5 U.S.C. § 301.................... 2

5 U.S.C. § 551(13).................... 11

5 U.S.C. § 5.48.................... 5

5 U.S.C. § 701.................... 11

5 U.S.C. § 702.................... 11

5 U.S.C. § 703.................... 11

5 U.S.C. § 704.................... 11

5 U.S.C. § 705 .......... 11

5 U.S.C. § 706 .......... 11

28 U.S.C. § 1391(e)(1) .......... 15

28 U.S.C. § 1404(a) .......... 15, 16

## Regulations

6 C.F.R. § 5.41 .......... 4, 5, 10, 12

19 C.F.R. § 103.21 .......... 5, 6, 9, 12

19 C.F.R. § 103.22 .......... 6

19 C.F.R. § 103.23 .......... 6

28 C.F.R. § 16.21 .......... 3, 4, 9

28 C.F.R. § 16.26 .......... 4

## Other Authorities

Hennepin County Attorney's Office, News, *Hennepin County Attorney's Office announces two-way evidence sharing between state and federal agencies for Metro Surge shootings*, https://www.hennepinattorney.org/news/news/2026/July/evidence-sharing .......... 8

Hennepin County Attorneys Office, News, Hennepin County Attorney's Office charges ICE agent in shooting of Julio Sosa-Celis, https://www.hennepinattorney.org/news/news/2026/May/castro-charges .......... 10

Philip Marcelo & Rebecca Boone, *Minnesota prosecutors obtain long withheld evidence in probe into fatal shootings of Good, Pretti*, PBS News (Jul. 13, 2026, 4:22 PM), https://www.pbs.org/newshour/nation/minnesota-prosecutors-obtain-long-withheld-evidence-in-probe-into-fatal-shootings-of-good-pretti .......... 9

*Proceeding*, BLACK'S LAW DICTIONARY 12TH ED. 2024 .......... 3

Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure*, (2d ed. 1899) .......... 3

## INTRODUCTION

Plaintiffs are the State of Minnesota and two state officials ("Plaintiffs") who challenge the choice committed to agency discretion by law of the Department of Justice ("DOJ") and the Department of Homeland Security ("DHS") to decline to produce records. The request came to DHS and DOJ by way of six separate letters seeking law enforcement information compiled by federal officials during their investigation of three officer-involved shootings that occurred in Minnesota. Two DHS components United States Immigration and Customs Enforcement ("ICE") and United States Customs and Border Protection ("CBP") had personnel who were involved in one or more of the incidents at issue in this matter. Plaintiffs contend that their letters constituted *Touhy* requests pursuant to agency regulations governing demands for official information in state or federal proceedings. They claim that the Federal Government's failure to accede to their demands was arbitrary and capricious, not in accordance with law, and in excess of statutory authority final agency action under the Administrative Procedure Act ("APA"). Plaintiffs also recast their complaint as a violation of the Tenth Amendment. None of these claims has merit.

As a threshold matter, Plaintiffs failed to comply with Defendants' respective *Touhy* regulations and thus cannot complain because procedural compliance is a condition precedent to obtaining official information. While all of Defendants' regulations authorize law-enforcement to law-enforcement exchanges of information as a matter of discretion, actions that are committed to agency discretion by law, as these decisions are, are not subject review under the APA. Consequently, Plaintiffs' APA claims—all variations of the same complaint—should be dismissed on that basis. Likewise, Plaintiffs' argument that the Tenth Amendment entitles them to injunctive relief to access evidence should also be dismissed because the Tenth Amendment is merely a reservation of power and does not trump the Supremacy Clause.

Finally, in the event that the Court does not dismiss the case, the Court should transfer it to the District of Minnesota because the majority of the operative events occurred there. Indeed, the offices of the Plaintiff state officials commenced an action there seeking access to these same investigative materials and when that court denied that relief, those officials and the State pivoted to file this action—in effect a second bite at the apple.

## BACKGROUND

### I. Regulatory Background

The Housekeeping statute, 5 U.S.C. § 301, provides that "[t]he head of an Executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." Pursuant to this statute, the Attorney General and the Secretary of Homeland Security have promulgated their own regulations governing requests for official information in state or federal proceedings. The Supreme Court upheld the legality of these regulations in *United States ex rel. Touhy v. Ragen*, and consequently the regulations are commonly known as "*Touhy*" regulations. 340 U.S. 462, 468-69 (1951). Courts have upheld agency *Touhy* regulations. *See*, *e.g.*, *United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981) ("The Department of Justice has a legitimate interest in regulating access to government information contained in its files or obtained by its employees during the scope of their official duties."); *see also Est. of Pal v. Barcode Corp.*, No. 19-109 (CKK), 2019 WL 4709902 at *1 (D.D.C. Sept. 26, 2019); *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) (upholding DHS Touhy regulations).

#### A. DOJ Regulations

DOJ's *Touhy* regulations provide that they apply "[i]n all federal and state proceedings in which the United States is not a party . . . ." 28 C.F.R. § 16.21(a)(2).[1] Proceeding is undefined in the regulatory text but generally is defined as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of [a] judgment." *Proceeding*, BLACK'S LAW DICTIONARY 12TH ED. 2024. *See also*, Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure*, 3-4 (2d ed. 1899) ("Proceeding is a word much used to express the business of done in courts. A proceeding in court is an act done by the authority or direction of the court, express or implied. It is more comprehensive than the word action, but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment. As applied to action, the term proceeding may include – (1) the institution of the action; (2) the appearance of the defendant; (3) all ancillary or provisional steps, such as arrest, attachment of property, garnishment, injunction, writ of *ne exeat*; (4) the pleadings; (5) the taking of testimony before trial; (6) all motions made in the action; (7) the trial; (8) the judgment; (9) the execution; (10) proceedings supplementary to execution, in code practice; (11) the taking of the appeal or writ of error; (12) the *remittitur*, or sending back of the record to the lower court from the appellate or reviewing court; (13) the enforcement of the judgment, or a new trial, as may be directed by the court of last resort." (citations omitted))). In the absence of a proceeding, DOJ's decision to disclose official information to external law enforcement agencies is a matter committed to agency discretion by law. 28 C.F.R. § 16.21(c).

Compliance with the regulations is a condition precedent to obtaining DOJ information. *See Smith v. Cromer*, 159 F.3d 875, 879-80 (4th Cir. 1998) (compliance with *Touhy* regulations

[1] DOJ regulations also apply when the United States is a party. 28 C.F.R. § 16.21(a)(1).

is required because "valid federal regulations have the force and effect of federal law" (citation omitted)); *United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994) (district court was correct to quash subpoenas to material witnesses during criminal trial because of failure to comply with DOJ *Touhy* regulations); *United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (district court was correct to quash a subpoena to a former DOJ employee after failure to comply with DOJ *Touhy* regulations); *Liptak v. County*, 16–225 (ADM/JSM), 2016 WL 5662082 (D. Minn. Aug. 24, 2016) (subpoena to the Department of Health and Human Services failed to comply with *Touhy* regulations necessitating subpoena to be quashed). As a discretionary matter, DOJ may relax these requirements for law-enforcement to law-enforcement information sharing. *See* 28 C.F.R. § 16.21(c) ("[n]othing in this subpart is intended to impede the appropriate disclosure, in the absence of a demand, of information by Department law enforcement agencies to federal, state, local and foreign law enforcement, prosecutive, or regulatory agencies"). If a request is compliant with the regulatory framework, Departmental officials must consider a list of enumerated factors in deciding whether disclosure is warranted. *See id.* § 16.26.

**B. DHS Regulations**

DHS's *Touhy* regulations apply to "[s]ervice of summonses and complaints or other requests or demands directed to the Department of Homeland Security (Department) or to any Department employee or former employee in connection with federal or state litigation arising out of or involving the performance of official activities of the Department." 6 C.F.R. § 5.41(a)(1).[2] "[T]he term 'litigation' encompasses all pre-trial, trial, and post-trial stages . . .before courts, commissions, boards . . .grand juries, or other judicial or quasi-judicial bodies or tribunals[.]" *Id.* § 5.41(d) (citation modified). The regulations also apply to:

[2] ICE does not have its own distinct regulations and, consequently, utilizes DHS's.

> The oral or written disclosure, in response to subpoenas, orders, or other requests or demands of federal or state judicial or quasi-judicial or administrative authority as well as state legislative authorities (collectively, "demands"), whether civil or criminal in nature, or in response to requests for depositions, affidavits, admissions, responses to interrogatories, document production, interviews, or other litigation-related matters, including pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, or applicable state rules (collectively, "requests"), of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired while the subject of the demand or request is or was employed by the Department, or served as Secretary of the Department, as part of the performance of that person's duties or by virtue of that person's official status.

*Id.* § 5.41(a)(2). Compliance with these regulations is a condition precedent to obtaining ICE information. *See Cromer*, 159 F.3d at 879-80; *Wallace*, 32 F.3d at 929; *Bizzard*, 674 F.2d at 1387; *Liptak*, 2016 WL 5662082. DHS's regulations allow for discretionary disclosure "to federal, state, local, or foreign prosecuting and law enforcement authorities in conjunction with criminal law enforcement investigations, prosecutions, or other proceedings." *See* 6 C.F.R § 5.41(i). DHS's Office of the General Counsel must authorize any disclosure of DHS's official information. *Id.* § 5.44(a). In the event of a compliant request, departmental officials consider a list of enumerated factors in deciding whether disclosure is warranted. *See id.* § 5.48. As a threshold matter, however, the regulations on whether disclosure is appropriate or not are only applicable where litigation is involved, *see id.* § 5.41(a)(1), and the request originates from "federal or state judicial or quasi-judicial or administrative authority as well as state legislative authorities." *See id.* § 5.41(a)(2). In the absence of either litigation or a request derived from an enumerated authority, DHS's decision to disclose official information to external law enforcement agencies is a matter committed to agency discretion by law. *See id.* § 5.41(i).

**C. CBP Regulations**

CBP has its own, distinct, *Touhy* regulations, which are codified at 19 C.F.R. § 103.21 *et seq*. CBP's *Touhy* regulations provide that they apply "to the production or disclosure of any . . .

'information,' in all federal, state, local, and foreign proceedings when a subpoena, notice of deposition . . .order, or demand . . .of a court, administrative agency, or other authority is issued for such information. 19 C.F.R. § 103.21(a)(1). Compliance with these regulations is a condition precedent to obtaining CBP information. *See Cromer*, 159 F.3d at 879-80; *Wallace*, 32 F.3d at 929; *Bizzard*, 674 F.2d at 1387; *Liptak*, 2016 WL 5662082. As a discretionary matter, CBP may relax these requirements for law enforcement to law enforcement information sharing. 19 C.F.R. § 103.21(e). CBP's Chief Counsel must review the request, and if a request is compliant with the regulatory framework and after CBP weighs a list of enumerated factors, CBP's Chief Counsel may approve any disclosure, s*ee id.* §§ 103.22(a), 103.23, 103.21(a)(1). In the absence of a proceeding, CBP's decision to disclose official information to external law enforcement agencies is a matter committed to agency discretion by law. *Id.* § 103.21(e).

## II. Factual and Procedural Background

In December 2025, DHS launched Operation Metro Surge, a large-scale immigration enforcement action in the State of Minnesota. During the operation, two individuals (Renee Good and Alex Pretti) were killed while a third individual (Julio Cesar Sosa-Celis) was wounded in officer-involved shootings. *See* Am. Compl. ¶ 2, ECF No. 17.

On January 24, 2026, the Minnesota Bureau of Criminal Apprehension ("BCA") headed by Plaintiff Evans and the Hennepin County Attorney's Office ("Hennepin County"), headed by Plaintiff Moriarty, filed a complaint against DHS and DOJ seeking, in part, "access to any . . . evidence" compiled following the death of Alex Pretti. *Minn. Bureau of Criminal Apprehension v. Mullin* ("*Minn. BCA*"), 0:26-cv-00628-ECT-DTS, Compl., Prayer for Relief ¶ c, ECF No. 1 (D. Minn., Jan. 24, 2026) (hereinafter "Minnesota Action"). The lawsuit sought declaratory and injunctive relief to vindicate the Plaintiffs' "right to access evidence" related to the shooting of

Alex Pretti. *Id*. ¶ 1. Plaintiffs asserted two alternative theories to vindicate their claimed right. *Id*. First, Plaintiffs argued, as they do here, that the Tenth Amendment grants them a core sovereign interest to investigate and enforce state criminal law which entitles them to access federally controlled evidence, *Id*. ¶¶ 35-41. Second, Plaintiffs argued that the "violations" of the Tenth Amendment by the Federal Government entitled Plaintiffs to a non-statutory right in equity to enjoin unconstitutional action *Id*. ¶ 43. Finally, Plaintiffs alternatively asserted that the Federal Government's refusal to share evidence with state officials was violative of the APA, *Id*. ¶¶ 46-51. Plaintiffs also alleged that there was a danger that Federal authorities would destroy evidence in the case, which quickly became the focus of the litigation. *See id.* ¶ 41. Although the district court entered a temporary restraining order on the same day, it only enjoined the defendant agencies from destroying or altering evidence from the Pretti case. *Minn. BCA*, Order, ECF No. 10 (D. Minn. Jan. 24, 2026). Following full briefing and oral argument, the court dissolved the TRO on February 2, 2026. *Minn. BCA*, Opinion and Order, ECF No. 24 (D. Minn. Feb. 2, 2026). The court reasoned that dissolution was proper because the state officials had failed to sustain their allegations that the Federal Government was attempting to destroy evidence or otherwise not investigating the incident. *See id.* at 10 ("Defendants maintain evidence-preservation policies, and no evidence shows that these policies are deficient or that Defendants are failing to comply with them.") The court declined to reach the remaining merits of Plaintiffs' claims. *Id.*

That same day Hennepin County, led by Plaintiff Moriarty, submitted the first of six letters—three identical requests to both DHS and the U.S. Attorney's Office for the District of Minnesota (USAO-MN)—requesting the release of investigatory information in connection with Hennepin County's investigation of the three incidents, including Alex Pretti, which was the subject of the then-ongoing Minnesota Action.

On March 3, 2026, ICE responded[3] to Plaintiffs' demand letter regarding Renee Good. ICE explained that the DHS "regulations do not apply to disclosure of official information to federal, state or local law enforcement authorities related to criminal law enforcement investigations." Ex. 8, ECF No. 1-8 (citation omitted). The other letters remained pending within DOJ and DHS.

On March 24, 2026, the plaintiff local government offices voluntarily dismissed the Minnesota Action. That same day, the heads of those offices, Plaintiffs Evans and Moriarty, and the State of Minnesota filed the APA action here challenging the Defendants' failure to provide the information Plaintiffs requested by letter. Compl., ECF No. 1.

Defendants responded to the remaining letters on June 4, 2026. USAO-MN denied each request because all three letters were procedurally deficient and because, for each case "the federal government has an open investigation into the incident[.]" *See, e.g.*, Good Letter, USAO-MN 31-32. ICE and CBP responded on behalf of DHS. CBP denied the information because "[a] state's criminal investigation alone does not meet the procedural requirements for a *Touhy* response." Pretti Letter, CBP 022. Similarly, ICE denied Plaintiffs' requests because "[t]he information you [Plaintiffs] seek is not associated with an ongoing court action, so the DHS *Touhy* regulations . . . do not apply." *See, e.g.*, Sosa-Celis Letter AR 000128 (internal citation omitted).

On June 18, 2026, Plaintiffs amended their complaint. Am. Compl. ECF No. 17. On July 13, 2026, Plaintiffs announced that "two-way evidence sharing between state and federal agencies for [the] Metro Surge shootings" had commenced. Hennepin County Attorney's Office, News, *Hennepin County Attorney's Office announces two-way evidence sharing between state and federal agencies for Metro Surge shootings*, https://www.hennepinattorney.org/news/news/2026/July/evidence-sharing (last visited Sept. 24,

[3] ICE had been delegated this task by DHS.

2026). Plaintiff Moriarty, on the same day, informed the press that, "[t]he wonderful thing now is we have all the evidence[.]" Philip Marcelo & Rebecca Boone, *Minnesota prosecutors obtain long withheld evidence in probe into fatal shootings of Good, Pretti*, PBS News (Jul. 13, 2026, 4:22 PM), https://www.pbs.org/newshour/nation/minnesota-prosecutors-obtain-long-withheld-evidence-in-probe-into-fatal-shootings-of-good-pretti (last visited Sept. 25, 2026). Nevertheless, Plaintiffs have continued their case.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted); *see Twin Metals Minn. LLC v. United States*, No. 22-cv-2506, 2023 WL 5748624, at *3 (D.D.C. Sept. 6, 2023). Allegations of unlawful conduct are not facially plausible given an "obvious alternative explanation" that is "necessarily incompatible with the plaintiffs' versions of events." *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 57 (D.C. Cir. 2019) (per curiam); *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567; *see* 28 C.F.R. § 16.21(a)(1)-(a)(2).

## ARGUMENT

### I. Plaintiffs' Failure to Comply with Defendants' *Touhy* regulations Require that Their APA Claims Be Dismissed Because Discretionary Agency Action is Unreviewable

#### A. Plaintiffs' Did Not Comply with Defendants' *Touhy* Regulations

Defendants' *Touhy* regulations are triggered by a request for official information out of "state or federal proceedings" *see* 19 C.F.R. § 103.21(a)(1) (CBP); 28 C.F.R. § 16.21(a)(2) (DOJ), or "litigation," *see* 6 C.F.R. § 5.41(d) (DHS). Plaintiffs have identified neither "proceedings" nor "litigation" to which their letter demands pertain. Although Plaintiffs have, as of May 2026, commenced "proceedings" and "litigation" related to the Sosa-Celis matter, Hennepin County Attorneys Office, News, *Hennepin County Attorney's Office charges ICE agent in shooting of Julio Sosa-Celis*, https://www.hennepinattorney.org/news/news/2026/May/castro-charges (last visited Sept. 25, 2026), Plaintiffs still have not submitted a compliant *Touhy* request in connection with those proceedings.

Instead, Plaintiffs seek the requested information for their "investigation" of the three incidents, *see*, *e.g.*, Am. Compl. ¶ 4 ("This lawsuit focuses on the three shooting incidents that occurred between January 7 and January 24, 2026 and the federal government's decision to block a state-level *investigation* into each incident.") (emphasis added); *id.*, Ex. 2, ECF No. 17-1 ("On January 7, 2026, a woman was shot and killed in Hennepin County. My office [Hennepin County] must conduct a full and transparent *investigation* into this death. We ask that the federal government provide the information necessary for us to complete this important *investigation*"), but an "investigation" is distinct from a "proceeding" as well as litigation, as defined in the DHS regulations. (emphasis added) The same defect is present in each of the initial letters sent to Defendants.

Because Plaintiffs' requests for evidence do not fit within Defendants' applicable *Touhy* regulations, the agencies' decisions whether to grant those requests are committed entirely to agency discretion by law. Consequently, Plaintiffs' claims under the APA fail

because agency decisions committed to agency discretion by law are not cognizable under the APA.[4] Because they are not Touhy requests, there is no final agency action and no waiver of sovereign immunity. *See* 5 U.S.C. §§ 701–06; *Heckler v. Chaney*, 470 U.S. 821, 828 (1985); *see also* 5 U.S.C. § 551(13). Indeed, the APA explicitly excludes from judicial review those agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

To determine whether a matter has been committed to agency discretion, courts "consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Secretary of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (quoting *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)). When an agency "is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F. 3d 269, 278 (4th Cir. 1999). The courts have a duty to respect legitimate policy choices made by agencies. *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council*, *Inc.*, 467 U.S. 837, 866 (1984) (citation omitted), *overruled on other grounds*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (abolishing *Chevron* deference to administrative agency interpretations of law.) While *Loper Bright* did overturn judicial deference to an agency's reasonable interpretation of an ambiguous statute, it did not overturn the APA's "mandate that judicial review of agency policymaking and factfinding be deferential." *Loper Bright Enters.*, 603 U.S. at 392. Further, an agency does not have to spell out a "formulaic incantation" of its consideration of the applicable *Touhy* regulations to satisfy the APA. *Spence v. NCI Info. Sys.*, *Inc.*, 530 F. Supp.

[4] Although an APA action is appropriate to challenge a response to a *Touhy* request in state court proceedings because the APA provides the necessary waiver of sovereign immunity. *United States v. Williams*, 170 F.3d. 431, 434 (4th Cir. 1999), Plaintiffs' requests are not *Touhy* requests.

2d 739, 745 (D. Md. 2008) (upholding an agency's refusal to comply with a subpoena where the agency did not "refer specifically" to the applicable *Touhy* regulations but where the grounds for refusal were "readily discernable").

### B. Plaintiffs' Claims Must Be Dismissed Because Each Request Letter Implicated Defendants' Discretionary Authority to Share Information With External Law Enforcement Organizations

Because of their procedural defects, Plaintiffs' requests are properly considered under the discretionary law enforcement to law enforcement sharing provision in each of Defendants' regulations. *See* 6 C.F.R. § 5.41(i) (DHS); 19 C.F.R. § 103.21(e) (CBP); 28 C.F.R. § 16.21(c) (DOJ). The regulatory provisions permit the respective agencies, in their discretion, to share information with external law enforcement agencies. *See*, *e.g.*, 28 C.F.R. § 16.21(c) (DOJ regulations provide that "[n]othing in this subpart is intended to impede the appropriate disclosure, in the absence of a demand, of information by Department law enforcement agencies to federal, state, local and foreign law enforcement, prosecutive, or regulatory agencies."); *see also* 6 C.F.R. § 5.41(i) (DHS); 19 C.F.R. § 103.21(e) (CBP). Plaintiffs' assertions, *see*, *e.g.*, Am. Compl. ¶ 9 ("Defendants' refusal to share evidence here did not arise from any case-specific investigative need. Instead, the breakdown in cooperation followed intervention by senior federal officials who directed evidence would not be shared with Minnesota authorities"); Am. Compl. ¶ 11 ("Defendants' responses to those requests . . . confirm that the federal government has adopted a policy and practice of refusing Minnesota authorities access to investigative materials relate[d] to the use[] of force by federal immigration officers deployed to Minnesota as part of Operation Metro Surge. . . ."), mistake procedural hurdles caused by their own defective requests for malfeasance by Defendants and fail to state a claim under the APA. *See Twombly*, 550 U.S. at 555. Because the challenged

actions were committed to agency discretion by law, Plaintiffs cannot utilize the APA to compel review and this Court must dismiss their complaint.

## II. Plaintiff's Tenth Amendment Claim to Entitlement to Federal Investigative Materials Fails Because the Tenth Amendment Only Retains Certain Powers to the States and Does Not Require Federal Agencies to Provide Investigative Materials to State Authorities.

Plaintiffs erroneously claim a sovereign right under the Tenth Amendment to compel evidence from federal law enforcement agencies, *see* Am. Compl. ¶ 136 ("Defendants' actions to block state and local investigators from accessing evidence that is critical to ongoing criminal investigations into potential violations of Minnesota law violates Plaintiffs' core sovereign interests . . . ."). That Amendment provides that " [t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. It is a reservation of authority, not a cause of action authorizing States to compel federal agencies to disclose federal records, testimony, or investigative materials. *See New York v. United States*, 505 U.S. 144, 156-57 (1992) ("[T]he Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States.") In contrast, the Supremacy Clause makes clear that Plaintiffs can have no such right against the Federal Government.

Plaintiffs rely on cases that are inapposite. *See* Am. Compl. ¶¶ 134-135. Specifically, Plaintiffs invoke cases that stand for the general proposition that States have the right to regulate their police force. *See*, *e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) (Congress cannot regulate purely intrastate violent activity because "[t]he regulation [of] and punishment of intrastate violence . . . has always been the province of the States"); *Patterson v. Kentucky*, 97 U.S. 501, 503 (1878) (Congress may regulate patent law consistent with its

constitutional requirement to promote the sciences and useful arts but may not regulate the police because "the power to establish the ordinary regulations of police has been left with the individual States" ( citation omitted)). There is no claim here that the Federal Government is regulating Minnesota's police officers.

Plaintiffs also assert that Defendants' conduct "violates Plaintiffs' core sovereign interest[] in investigating and enforcing Minnesota criminal law." Am. Compl. ¶ 136. To the contrary, as discussed above, it is the Plaintiffs that seek to abrogate the Federal Government's sovereignty by forcing the federal government to assist in their investigations. Neither the Tenth Amendment nor principles of dual sovereignty permit the Plaintiffs to demand such action from the federal government.

Inexplicably, Plaintiffs completely ignore the Supremacy Clause in making their claim. The Supremacy Clause provides that, "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any [t]hing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause "is designed to ensure that states do not 'retard, impede, burden, or in any manner control' the execution of federal law." *New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004) (quoting *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819)); *cf. Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982) (valid federal regulation preempts state law). Thus, "the sharp edge of the Supremacy Clause" preempts any use of state process that requires the Federal Government to assist state law investigations contrary to its own statutes or regulations. *See United States v. McLeod*, 385 F.2d 734, 745 (5th Cir. 1967). Consequently, the

Housekeeping statute, and Defendants' *Touhy* regulations, which emanate from that grant of power, preempt any Tenth Amendment claim asserted by the Plaintiffs.

## III. This Case Should be Transferred to a Proper Venue

Notwithstanding that venue in the District of Columbia is appropriate because Defendants reside there, *see* 28 U.S.C. § 1391(e)(1), the Court should transfer venue to the District of Minnesota pursuant to Section 1404(a).[5] Section 1404(a) authorizes the Court to transfer an action to "any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses [and] in the interest of justice[.]" *Id.* § 1404(a). In considering a Section 1404 motion to transfer, a district court must balance "the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). That involves two steps. First, a court determines whether the action could have been brought in the transferee district. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Second, a court undertakes a "flexible and individualized analysis" of "the interest of justice" and "convenience." *Rsch. Automation, Inc., v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 977–78 (7th Cir. 2010) (citation omitted). "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.* at 978 (citation omitted). Here, that two-part analysis supports transfer to Minnesota.

### A. Transfer is Appropriate Because this Action Could Have Been Brought in the District of Minnesota.

[5] Although Plaintiffs' claims lack a cognizable basis for relief, *see supra* Parts I-II, the Court does not need to reach that issue if it transfers the case to a different venue, *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (citations omitted).

The Minnesota Action named the heads of both DOJ and DHS as defendants, along with a slew of other officials, *Minn. BCA*, 0:26-cv-00628-ECT-DTS, ECF No. 1. The only difference here is that the instant lawsuit incorporates complaints against the departments themselves and rather than agency Plaintiffs filing suit, here the officials in charge of those same agencies have filed suit. *See generally* Am. Compl. The Minnesota Action raised similar complaints, though only within the context of the Pretti case. *See*, *e.g.*, *Minn. BCA*, Compl. ¶¶ 36-41 (raising the same Tenth Amendment claims discussed in *supra* Part II). Given that the other two matters complained of in the instant case are facially similar to the Pretti case there is no doubt that this case "might have been brought" in the District of Minnesota, 28 U.S.C. § 1404(a), because it essentially was.

### B. The Interest of Justice and Convenience Factors Strongly Favor Transfer to the District of Minnesota.

The interest of justice includes "systemic integrity" and "fairness." *See Stewart*, 487 U.S. at 30. Courts may give dispositive weight to the public's interest in preventing forum shopping—reflecting the longstanding recognition that Section 1404(a) was "designed to remedy the evils of forum shopping." *Torres v. S.S. Rosario*, 125 F. Supp. 496, 497 (S.D.N.Y. 1954) (citation omitted); *see Coll. Ret. Equities Fund v. Boeing Co.*, No. 22-cv-3845, 2025 WL 1207313, at *5 n.4 (N.D. Ill. Apr. 25, 2025) (observing that it is "contrary to the interest of justice to encourage the lawyerly instinct to select a court or judge based on a belief on how the court will decide a case"); *Encyclopaedia Britannica*, *Inc. v. Magellan Navigation*, *Inc.*, 512 F. Supp. 2d 1169, 1177 (W.D. Wis. 2007) (holding that the interest of justice factors were determinative and warranted granting a motion to transfer when the "transfer would stop plaintiff's forum shopping"); *see also Dongguan Deego Trading Co. v. Junyao-US*, No. 25-cv-4962, 2025 WL 2174325, at *3 (N.D. Ill. July 31, 2025) (sanctioning a plaintiff that voluntarily dismissed its suit and refiled in another district, concluding the plaintiff "exhibited 'reckless and indifferent' disregard for the law" by "manipulat[ing] procedural rules (in th[at] case Rule 41(a)(1)(A)(i) dismissal) to curate a favorable forum").

The convenience factors include "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties." *Esposito v. Airbnb Action LLC*, 538 F. Supp. 3d 844, 847 (N.D. Ill. 2020) (citation omitted). Here, Plaintiffs face no prejudice in a return to Minnesota, given that is their home forum. Similarly, the responsive officials from DOJ also reside within that District, as do DHS officials with first-hand knowledge of the incidents giving rise to the case at hand. Accordingly, the Court should not give any deference to Minnesota's new choice of forum. *See id.*; *see also Vital Pharms., Inc. v. Monster Energy Co.*, No. 20-cv-1127, 2020 WL 6162796, at *3 (C.D. Cal. Aug. 27, 2020) ("[P]laintiff's forum shopping"—filing suit "in a forum thousands of miles away from its home district"—"entitles its choice of forum to no deference and weighs in favor of transferring this matter"); *Vu v. Ortho-McNeil Pharm, Inc.*, 602 F. Supp. 2d 1151, 1156 (C.D. Cal. 2009) ("[W]here a plaintiff does not reside in the forum, the Court may afford plaintiff's choice considerably less weight." (citation omitted)); *Mitchell v. Deutsche Bank Nat. Trust Co.*, No. SACV 15-01307-CJC(JCGx), 2015 WL 12867746, at *3 (C.D. Cal. Oct. 29, 2015) ("[C]oncerns of forum-shopping are potentially present when a plaintiff pursues litigation outside his home district."). Instead, because a majority of the relevant evidence and witnesses are located in Minnesota it would be far more efficient to have the case heard in its original location.

## CONCLUSION

The Court should grant this Motion and dismiss the Complaint for the reasons stated heretofore or, alternatively, transfer the matter back to the District of Minnesota.

Dated: September 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ *Patrick K. Keating*
PATRICK K. KEATING (MD Bar No. 2211140001)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 598-0256
Email: Patrick.K.Keating@usdoj.gov

*Counsel for Defendants*