**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF MINNESOTA, *et al*.<br>*Plaintiffs*,<br>vs.<br>U.S. DEPARTMENT OF JUSTICE, *et al.*<br>*Defendants*. | Civil Action No. 1:26-cv-1007-EGS |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS OR TRANSFER AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 1

I. Plaintiffs Have Failed to Establish that they Complied with Defendants' Touhy Regulations ........................................................ 1

A. Defendants' Valid Touhy Regulations Require a Live Proceeding. ........................ 1

B. Plaintiffs' Misinterpretation of the Housekeeping Statute Would Require This Court to Overrule Touhy. ........................................................ 6

II. This Court Lacks a Means to Review Plaintiffs' Merits Arguments Because Defendants' Actions were Committed to Agency Discretion by Law. ........................ 8

III. The Tenth Amendment Provides No Basis for Relief. ........................ 9

IV. Plaintiffs' Forum Shopping Necessitates Transfer to Minnesota. ........................ 12

CONCLUSION ........................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Drake v. FAA*,
291 F.3d 59 (D.C. Cir. 2002) .......... 6

*Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) .......... 11

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 9

*Houston Bus. J., Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treas.*,
86 F.3d 1208 (D.C. Cir. 1996) .......... 7

*In re Boeh*,
25 F.3d 761 (9th Cir. 1994) .......... 7

*McCulloch v. Maryland*,
17 U.S. 316 (1819) .......... 11

*New York v. Tanella*,
374 F.3d 141 (2d Cir. 2004) .......... 11

*New York v. United States*,
505 U.S. 144 (1992) .......... 10

*Secretary of Labor v. Twentymile Coal Co.*,
456 F.3d 151 (D.C. Cir. 2006) .......... 6

*Smith v. Cromer*,
159 F.3d 875 (4th Cir. 1998) .......... 11

*State v. Olson*,
867 N.W.2d 258 (Minn. Ct. App. 2015) .......... 3

*State v. Olson*,
884 N.W.2d 395 (Minn. 2016) .......... 3

*Torres v. S.S. Rosario*,
125 F. Supp. 496 (S.D.N.Y. 1954) .......... 13

*United States v. Bizzard*,
674 F.2d 1382 (11th Cir. 1982) .......... 11

*United States v. McLeod*,
385 F.2d 734 (5th Cir. 1967) .......... 11

*United States v. Wallace*,
32 F.3d 921 (5th Cir. 1994) ........................................................................................ 11

**Constitution**

Minn. Const. art. V, sec. 1 ........................................................................................ 3

**Statutes**

5 U.S.C. § 301 ........................................................................................ 7

5 U.S.C. § 706 ........................................................................................ 5

Minn. Stat. § 299C.03 ........................................................................................ 6

Minn. Stat. § 388.051 ........................................................................................ 6

H.R. No. 1461, 85th Cong., 2d Sess. (1958) (1958 U.S.C.C.A.N. 3352) ........................................ 7

**Regulations**

6 C.F.R. § 5.41(a) ........................................................................................ 6

6 C.F.R. § 5.41(a)(1) ........................................................................................ 2

6 C.F.R. § 5.41(d) ........................................................................................ 1, 2, 3

6 C.F.R. § 5.41(i) ........................................................................................ 4

6 C.F.R. § 5.45 ........................................................................................ 4

19 C.F.R. § 103.21(a) ........................................................................................ 2

19 C.F.R. § 103.21(a) ........................................................................................ 6

19 C.F.R. § 103.21(a)(1) ........................................................................................ 1, 2

19 C.F.R. § 103.21(e) ........................................................................................ 4

19 C.F.R. § 103.22 ........................................................................................ 4

28 C.F.R. § 16.21 ........................................................................................ 6

28 C.F.R. § 16.21(a)(2) ........................................................................................ 1, 2, 4

28 C.F.R. § 16.21(c) ........................................................................................ 4, 5

28 C.F.R. § 16.24(b) ........................................................................................ 4, 5

**Other Authorities**

Philip Marcelo & Rebecca Boone, *Minnesota prosecutors obtain long withheld evidence in probe into fatal shootings of Good, Pretti*, PBS News (Jul. 13, 2026), https://www.pbs.org/newshour/nation/minnesota-prosecutors-obtain-long-withheld-evidence-in-probe-into-fatal-shootings-of-good-pretti ........ 10

Hennepin County Attorney's Office, News, *Hennepin County Attorney's Office charges ICE agent in shooting of Julio Sosa-Celis*, https://www.hennepinattorney.org/news/news/2026/May/castro-charges ........ 10

## INTRODUCTION

Plaintiffs challenge to the decision of the Departments of Justice and Homeland Security ("DOJ" and "DHS") to reject their self-styled *Touhy* requests remain meritless. Plaintiffs fundamentally misunderstand how the applicable regulations work and attempt to circumvent the applicable law by repeatedly referencing the circumstances that underlie this action. But those events do not obviate the regulatory requirements with which any plaintiff must comply to receive information from the federal government. Plaintiffs' arguments additionally fail because Defendants' decision to not disclose law enforcement information is committed to their discretion by law, which exempts this action from the Administrative Procedure Act ("APA"). Plaintiffs' invocation of the Tenth Amendment similarly fails. Finally, Plaintiffs' failure to rebut the allegations of forum shopping allows this Court to avoid all of these arguments and send the case back to Minnesota where it was originally brought.

## ARGUMENT

### I. Plaintiffs Have Failed to Establish that they Complied with Defendants' *Touhy* Regulations.

#### A. Defendants' Valid *Touhy* Regulations Require a Live Proceeding.

As discussed in Defendants' Motion to Dismiss, ECF No. 23 ("Def. Mot.") Defendants' *Touhy* regulations are triggered by a request for official information out of "state or federal proceedings," *see* 19 C.F.R. § 103.21(a)(1) (CBP); 28 C.F.R. § 16.21(a)(2) (DOJ), or "litigation," *see* 6 C.F.R. § 5.41(d) (DHS). Def. Mot. at 10. In response, Plaintiffs misconstrue the clear text of the regulations in an attempt to circumvent their failure to comply. *See* Pls. Opp'n and Cross-Mot. for Summ. J. at 35-37, ECF No. 27 ("Pls. Opp.").

Plaintiffs first assert that because CBP's regulations apply "in all federal, state, local, and foreign proceedings when a[n] . . . order, or demand . . . of a court, *administrative agency, or other authority* is issued for such information[,]" that "the regulation clearly sweeps beyond the narrow, court-limited definition of [a] 'proceeding' offered by Defendants." *Id*. at 35-36 (quoting 19 C.F.R. § 103.21(a)(1)) (emphasis in original). Plaintiffs seem to be arguing that because the regulation contemplates that requests for information may be submitted via "a subpoena, notice of deposition . . .order, or demand[,]" 19 C.F.R. § 103.21(a), then, consequently, they are entitled to CBP's information because their letter is a "demand." But this puts the cart before the horse. The regulatory text listing the means of requesting information is preceded by the condition precedent, "in all federal, state, local, and foreign *proceedings*." *Id*. (emphasis added). Hence, in the absence of proceedings CBP's regulations are not implicated.

Plaintiffs repeat their misstep with DOJ's regulations, Pls. Opp. at 36, which, much like CBP's regulations, apply "[i]n all federal and state *proceedings* in which the United States is not a party . . . ." 28 C.F.R. § 16.21(a)(2) (emphasis added). Once more, because Plaintiffs have failed to identify any proceedings the regulations are not implicated.

DHS's regulations are slightly different, but here Plaintiffs run into the same problem. *See* Pls. Opp. at 36. Specifically, DHS's *Touhy* regulations apply to "[s]ervice of summonses and complaints or other requests or demands directed to the Department of Homeland Security (Department) or to any Department employee or former employee in connection with federal or state *litigation* arising out of or involving the performance of official activities of the Department." 6 C.F.R. § 5.41(a)(1) (emphasis added). "[T]he term 'litigation' encompasses all pre-trial, trial, and post-trial stages . . . before courts, commissions, boards . . . grand juries, or other judicial or quasi-judicial bodies or tribunals[.]" *Id*.. § 5.41(d) (citation modified).

The regulatory definition of litigation clearly contemplates the commencement of a case given that the text utilizes the construction "before" to link the stage of litigation, "pre-trial, trial, and post-trial[,]" with the arena of litigation, "courts, commissions, boards . . . ." *Id*. Plaintiffs' failure to identify any relevant litigation consequently dooms their effort to invoke DHS's *Touhy* procedures.

DHS's regulations can also apply to "[t]he oral or written disclosure, in response to subpoenas, orders, or other requests or demands of federal or state judicial or quasi-judicial or administrative authority as well as state legislative authorities." *Id.* § 5.41(a)(2). But this provision is inapplicable to Plaintiffs because Plaintiffs are not a judicial, quasi-judicial, or administrative authority, but are instead executive agencies within the State of Minnesota. *See* Am. Compl. ¶ 15, ECF No. 17 ("Plaintiff State of Minnesota is . . . represented by and through its chief legal officer, Attorney General Keith Ellison[.]"); Minn. Const. art. V, sec. 1 ("The executive department consists of a governor, lieutenant governor, secretary of state, auditor, and *attorney general*[.]" (emphasis added)); Am. Compl. ¶ 16 ("Plaintiff Mary F. Moriarty . . . is vested with the power and authority of the State of Minnesota to bring all felony criminal cases . . . ."); *State v. Olson*, 867 N.W.2d 258, 261 (Minn. Ct. App. 2015) ("This oversight is justified by the fact that, despite a prosecutor's significant discretion as an *executive branch* officer, the *executive branch* has no discretion to cross into judicial branch authority." (emphasis added), *rev'd*, 884 N.W.2d 395 (Minn. 2016)); Am. Compl. ¶ 17 ("Plaintiff Drew Evans is the Superintendent of the BCA, which is a statutory division of the Minnesota Department of Public Safety, an agency within the *Executive Branch* of the State of Minnesota's government. (emphasis added)). Hence, 6 C.F.R. § 5.41(d) is inapplicable to Plaintiffs by its very text.

Plaintiffs claim that Defendants' invocation of their clear regulatory text will lead to "absurd results[.]" Pls. Opp. at 37. But this argument once more misapprehends the regulatory structure. Whether or not a state court can enforce a subpoena against a federal agency, it is irrelevant to the central issue that Plaintiffs have failed to plead or argue: at the time of their requests no proceedings or litigation had commenced. Subsequently, the regulatory process contemplated by Defendants' regulations, *see* 6 C.F.R. § 5.45 (DHS); 19 C.F.R. § 103.22 (CBP); 28 C.F.R. § 16.24(b) (DOJ), cannot commence because Plaintiffs have failed to establish the relevant condition precedent. This is not an "absurd" result but rather the clear result of a valid regulatory scheme.

Plaintiffs also assert that the discretionary provision of each of Defendants' regulations support their misinterpretation of the relevant regulation. Pls. Opp. at 37. The regulatory provisions permit the respective agencies, in their discretion, to share information with external law enforcement agencies. *See*, *e.g.*, 28 C.F.R. § 16.21(c) (DOJ regulations provide that "[n]othing in this subpart is intended to impede the appropriate disclosure, in the absence of a demand, of information by Department law enforcement agencies to federal, state, local and foreign law enforcement, prosecutive, or regulatory agencies."); *see also* 6 C.F.R. § 5.41(i) (DHS); 19 C.F.R. § 103.21(e) (CBP). Plaintiffs argue that "[i]f investigations were already outside of the regulation's processes because they are not 'proceedings,' then there would be no need to include this express authorization." Pls. Opp. at 37. But this reading, once again, fails to comprehend the structure of Defendants' regulations.

The DOJ regulations provide an example. As discussed, *supra*, 28 C.F.R. § 16.21(a)(2) provides that the procedures of DOJ's *Touhy* regulations apply "in all federal and state proceedings in which the United States is not a party . . . when a subpoena, order, or other demand (hereinafter

collectively referred to as a 'demand') of a court or other authority is issued for such material or information." *Id*. If a requester submits a proper demand in connection with federal or state proceeding then the responsible DOJ official may authorize the "production of material" after inquiring on the views of the originating component and completing an assessment of enumerated considerations to determine whether production should be made pursuant to the demand. *Id*. § 16.24(b). The discretionary provision identified by Plaintiffs, 28 C.F.R. § 16.21(c), is the *exception* to this procedure. And, as the exception, it is reasonable that § 16.21(c) is less mandatory than the standard procedure insofar as it allows for disclosure "in the absence of a demand" to outside agencies. *Id*. But the existence of the exception does not obviate the requirements of the standard procedure no more than exceptions to the warrant requirement obviate the Fourth Amendment. Defendants, in their discretion, have declined to share information with Plaintiffs. That refusal, however, has no bearing on Plaintiffs' separate and independent failure to satisfy the mandatory requirements of Defendants' standard procedures for data disclosure.

Even if the Court were to disagree, however, Plaintiffs' suggestion that "the Court should direct the Defendants to immediately provide Plaintiffs with access to the requested evidence and issue a permanent injunction against further obstruction[,]" Pls. Opp. at 43, is inappropriate. Under the APA, a district court's powers are limited; a district court may "hold unlawful and set aside" agency action, but it is not broadly empowered to craft novel remedies that are not authorized by the relevant statute or regulatory scheme. *See* 5 U.S.C. § 706. Here, neither the relevant statute nor the operative regulations permit such an action. Hence, the best course of action would be to remand to the relevant agencies with instructions to ensure compliance.

Next, Plaintiffs cite various provisions of Minnesota state law in an attempt to argue that they have in fact commenced proceedings. Pls. Opp. at 38. But this effort is fatally undercut by

Plaintiffs' own words: "[t]he investigations are all with an eye towards *potential criminal proceedings* before a court, should the facts support them." *Id*. (emphasis added). Defendants' regulations are not implicated by *potential* proceedings, but rather proceedings (28 C.F.R. § 16.21 (DOJ) and 19 C.F.R. § 103.21(a) (CBP)) and litigation (6 C.F.R. § 5.41(a) (DHS)). Furthermore, the statutory provisions cited by Plaintiffs are inapposite. Minn. Stat. § 299C.03 empowers the Bureau of Criminal Apprehension ("BCA") "to conduct such *investigations* as the superintendent, with the approval of the commissioner of public safety, may deem necessary to secure evidence which may be essential to the apprehension and conviction of alleged violators of the criminal laws of the state." *Id*. (emphasis added). But as discussed, *supra*, investigations are not proceedings and the statute does not empower the BCA to commence a proceeding. *See id*. Similarly, Minn. Stat. § 388.051 lays out the duties and responsibilities of a state prosecutor in Minnesota but does not lend any support to the commencement of proceedings that Defendants' regulations necessitate. Plaintiffs assert that "[t]hese facts clearly meet the threshold requirement of demand from state authorities for access to evidence." Pls. Opp. at 38. But the issue, as discussed repeatedly *supra*, is not the demand but the absence of proceedings. Plaintiffs cannot overcome that hurdle and, consequently, cannot seek review in this Court, for the reasons discussed *infra*.

### B. Plaintiffs' Misinterpretation of the Housekeeping Statute Would Require This Court to Overrule *Touhy*.

To determine whether a matter has been committed to agency discretion, courts "consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Secretary of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (quoting *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)). Plaintiffs argue that Defendants' invocation of the Housekeeping Statute

undermines their refusal to disclosure information. Pls. Opp. at 27. Plaintiffs correctly note that the Housekeeping Statute provides that it "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. But Defendants do not assert that the Housekeeping Statute as a basis to refuse to disclose information to the public. Rather, Defendants have repeatedly asserted that their refusal to disclose information is a result of Plaintiffs' failure to comply with Defendants' *Touhy* regulations. *See generally* Def. Mot. The Housekeeping Statue provides the grant of authority to Defendants but is not the basis of their refusal to disclose. The Ninth Circuit, when confronted with a district court's holding of an FBI official in civil contempt for abiding by DOJ's *Touhy* regulations and refusing to disclose information without prior authorization, considered the nuance raised by this exact point:

> The last sentence of the housekeeping statute provides: "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. This sentence was added in 1958, and the dissent cites legislative history indicating that the amendment was adopted in response to the executive's increasing use of the housekeeping statute as a source of executive privilege. *See* H.R. No. 1461, 85th Cong.2d Sess. (1958), *reprinted in* 1958 U.S.C.C.A.N. 3352. That point is most certainly correct, but it does not address the question presented in this case or in *Touhy:* how is the validity of an assertion of executive privilege to be contested? *Touhy* held that it is *not* to be contested originally in a contempt proceeding against a subordinate who has been denied permission to respond to a subpoena. The House Report discussing the 1958 amendment is replete with statements that the housekeeping statute is not to be used as a source of executive privilege, but the report never states that the purpose of the amendment is to overrule *Touhy* and the amendment has never been so construed by courts. If the action of a department head is contested directly, as *Touhy* requires, then the 1958 amendment assures that the department head may not base an assertion of privilege on the housekeeping statute.

*In re Boeh*, 25 F.3d 761, 767 (9th Cir. 1994); *see also Houston Bus. J., Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) ("a state-court litigant must request the documents from the federal agency pursuant to the agency's regulations . . . [i]f the agency refuses to produce the requested documents, the sole remedy for the state-court litigant

is to file a collateral action in federal court under the APA"). Indeed, Plaintiffs' contention that Congress's revisions to the Housekeeping Statute inure "against agency discretion in refusing to provide records[,]" Pls. Opp. at 27, would represent a wholesale overturning of *Touhy* because even if Plaintiffs had complied with the regulatory requirements of Defendants' regulations, Defendants could have, after a throughout consideration of the relevant factors as required under the regulatory text, still refused to turn over the sought after information. The difference is that that decision could be reviewed by this Court because each of the applicable regulatory schemes provides criteria that the Court can measure to determine whether Defendants acted reasonably. Plaintiffs' failure to comply with the condition precedent for those regulatory processes leaves no base line to assess Defendants' refusal, because each of the implicated regulatory schemes are acts of discretion as committed to each agency by the Housekeeping Statute.

If Plaintiffs' contention were accepted then *Touhy* and its progeny would have no meaning, because if no information can be withheld under the statute then the regulations themselves have no force. Even where a valid request is made, unlike in this case, the regulations still allow the agency the *discretion* to refuse to take action. Hence, if the Housekeeping Statute did repeal *Touhy* as Plaintiffs imply, then *Touhy* regulations across the government would be pointless. Indeed, a litigant could simply file a *Touhy* request and in Plaintiffs' conception of the world, such a request must be honored. This is an absurd result that no court has embraced in the seven decades since the revisions to the Housekeeping Statute were promulgated. This Court should not be the first.

## II. This Court Lacks a Means to Review Plaintiffs' Merits Arguments Because Defendants' Actions were Committed to Agency Discretion by Law.

Plaintiffs assert a litany of arguments in support of their contention that Defendants' refusal to disclose information is violative of the APA. Pls. Opp. at 28-34; *id.* at 39-40. But all of these

arguments fail because, as discussed in Part I, *supra*, Defendants' actions were committed to their respective agency's discretion by law, which prevents this Court from measuring Defendants' conduct against any kind of meaningful standard. As the Supreme Court has explained:

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. This construction avoids conflict with the "abuse of discretion" standard of review in § 706—if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

*Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Here, as previously discussed, Defendants' refusal to disclose information is a consequence of Plaintiffs' failure to comply with Defendants' *Touhy* regulations. As such, the only means Defendants had to evaluate Plaintiffs' request is via Defendants' discretionary exceptions to their respective *Touhy* regulations. DOJ's supposed "flip flops" demonstrate the impossibility of adjudicating this dispute under the APA. *See* Pls. Opp. at 33. Plaintiffs take issue with DOJ's discretionary choice to share some, but not all, of the evidence requested. *Id*. DOJ's limited sharing, however, was under its discretionary exception to its *Touhy* regulations. And because those exceptions are purely discretionary they provide "no judicially manageable standards" "for judging how and when an agency should exercise its discretion" which leaves the Court no means to adjudicate whether DOJ, for example, was arbitrary or capricious in deciding to limit what information it provided to Plaintiffs. That renders Plaintiffs' merits arguments impossible to resolve. *See Heckler*, 470 U.S. at 830.

## III. The Tenth Amendment Provides No Basis for Relief.

The Tenth Amendment reserves to the States powers not delegated to the Federal Government; it does not create a cause of action authorizing States to compel federal agencies to disclose federal records, testimony, or investigative materials. Nor does Plaintiffs' Tenth

Amendment theory permit them to bypass valid federal regulations governing demands for federal information. Although the Amendment confirms that federal power is subject to limits that may, in a given instance, reserve authority to the States, it does not displace otherwise valid federal rules governing the disclosure of federal records, testimony, or investigative materials. See *New York v. United States*, 505 U.S. 144, 156-57 (1992) ("[T]he Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States."). Plaintiffs' invocation of the Amendment fails for two independent reasons.

First, absent from Plaintiffs' amended complaint or brief is any allegation that Defendants' discretionary decision to not share some information with Plaintiffs is actively preventing Plaintiffs from prosecuting any particular individual. Indeed, Plaintiffs, because of Defendants' discretionary choice to share some information, already "have all the evidence[.]" Philip Marcelo & Rebecca Boone, *Minnesota prosecutors obtain long withheld evidence in probe into fatal shootings of Good, Pretti*, PBS News (Jul. 13, 2026, 4:22 PM), https://www.pbs.org/newshour/nation/minnesota-prosecutors-obtain-long-withheld-evidence-in-probe-into-fatal-shootings-of-good-pretti (last visited Oct. 14, 2026). And the supposed "federal nullification of state police power by Executive fiat[,]" Pls. Opp. at 41, has not prevented Plaintiffs from bringing charges against the officer involved in the Sosa-Celis case. Hennepin County Attorney's Office, News, *Hennepin County Attorney's Office charges ICE agent in shooting of Julio Sosa-Celis*, https://www.hennepinattorney.org/news/news/2026/May/castro-charges (last visited Oct. 14, 2026). Plaintiffs do not allege that Defendants have barred them from initiating any particular prosecution. To the contrary, their asserted injury instead arises from Defendants' decision not to make additional discretionary disclosures outside the procedures established by the applicable *Touhy* regulations. That decision does not itself prevent Plaintiffs from exercising their

own investigative or prosecutorial authority. Defendants are not preventing Plaintiffs from bringing charges against any individual.

Second, to the extent Plaintiffs seek to compel disclosure through judicial process, the Supremacy Clause requires compliance with valid federal regulations governing such demands. Plaintiffs cannot use state investigatory authority to compel a federal agency or employee to produce information contrary to those regulations. The Supremacy Clause "is designed to ensure that states do not 'retard, impede, burden, or in any manner control' the execution of federal law." *New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004) (quoting *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819)); *cf. Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982) (valid federal regulation preempts state law). Thus, "the sharp edge of the Supremacy Clause" preempts any use of state process that requires the Federal Government to assist state law investigations contrary to its own statutes or regulations. *See United States v. McLeod*, 385 F.2d 734, 745 (5th Cir. 1967). Plaintiffs' failure to comply with regulatory requirements, discussed in Part I, *supra*, neuters their Tenth Amendment argument because courts have consistently required compliance with applicable *Touhy* procedures before a party may seek to compel testimony or records from federal agencies or employees. Defendants' regulations are valid. *See Smith v. Cromer*, 159 F.3d 875, 879-80 (4th Cir. 1998) (compliance with *Touhy* regulations is required because "valid federal regulations have the force and effect of federal law" (citation omitted)); *United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994) (district court was correct to quash subpoenas to material witnesses during criminal trial because of failure to comply with DOJ *Touhy* regulations); *United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (district court was correct to quash a subpoena to a former DOJ employee after failure to comply with DOJ *Touhy* regulations).

Because Plaintiffs did not satisfy the threshold requirements of the applicable regulations, their Tenth Amendment claim supplies no independent basis to compel disclosure.

## IV. Plaintiffs' Forum Shopping Necessitates Transfer to Minnesota.

Notably, Plaintiffs do not deny that they engaged in forum shopping when bringing this case in this District. *See* Pls. Opp. at 45. Rather, Plaintiffs simply proclaim that "it is not forum shopping to sue DOJ and DHS in the United States District Court for the District of Columbia." *Id*. Neither this conclusory proclamation nor any aspect of their lengthy recitation of the procedural history of this action, however, address Plaintiffs' first bite at the apple: *Minn. Bureau of Criminal Apprehension v. Mullin*, 0:26-cv-00628-ECT-DTS, Compl., Prayer for Relief, ECF No. 1 (D. Minn., Jan. 24, 2026) (hereinafter "Minnesota Action"). The claims brought in the Minnesota Action are nearly identical to the instant lawsuit a fact unrebutted by Plaintiffs:

> The only difference here is that the instant lawsuit incorporates complaints against the departments themselves and rather than agency Plaintiffs filing suit, here the officials in charge of those same agencies have filed suit. *See generally* Am. Compl. The Minnesota Action raised similar complaints, though only within the context of the Pretti case. *See*, *e.g.*, *Minn. BCA*, Compl. ¶¶ 36-41 (raising the same Tenth Amendment claims . . .

Def. Mot. at 16. Rather than responding to these arguments and demonstrating independent case-specific reasons as to why suit was brought here instead of Minnesota, Plaintiffs double down arguing that this Court and the D.C. Circuit "have an expertise in administrative law that makes them the logical choice for this administrative law case." *Id*. That generalized assertion does not justify Plaintiffs' decision to abandon their original Minnesota forum and file a materially overlapping action here. But transfer back to the District of Minnesota is appropriate because Plaintiffs' Minnesota Action demonstrates that the true motive is to get a second bite at the apple. Courts may give dispositive weight to the longstanding recognition that Section 1404(a) was

"designed to remedy the evils of forum shopping." *Torres v. S.S. Rosario*, 125 F. Supp. 496, 497 (S.D.N.Y. 1954) (citation omitted).

## CONCLUSION

The Court should deny Plaintiffs' Cross-Motion and instead grant Defendants' Motion and dismiss the amended Complaint for the reasons stated heretofore or, alternatively, transfer the matter back to the District of Minnesota.

Dated: October 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ *Patrick K. Keating*
PATRICK K. KEATING (MD Bar No. 2211140001)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 598-0256
Email: Patrick.K.Keating@usdoj.gov

*Counsel for Defendants*