**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STATE OF MINNESOTA, *by and through its Attorney General Keith Ellison*; MARY MORIARTY, *in her official capacity as the Hennepin County Attorney;* and DREW EVANS, *in his official capacity as Superintendent of the Minnesota Bureau of Criminal Apprehension*;

*Plaintiffs,*

v.

U.S. DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF HOMELAND SECURITY, TODD BLANCHE, *in his official capacity as Attorney General of the United States;* and MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security*;

*Defendants.*

No. 26-cv-1007 (EGS)

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

ARGUMENT ..... 1

I. The Decision to Bar Plaintiffs from Accessing Evidence Shortly after the Shootings Was Arbitrary and Capricious ..... 3

II. It Was Arbitrary and Capricious for Defendants to Refuse to Share Evidence under the Law Enforcement Sharing Provisions, and Defendants' Only Answer —that these Refusals Are "Exempt[]" from the APA—Is Wrong ..... 4

III. The Proceedings-Only Rationale, Advanced for the First Time in June, Is an Impermissible *Post Hoc* Rationalization, but It Would Fail Even If the Court Could Consider It ..... 6

IV. Plaintiffs Are Entitled to Summary Judgment on Their Tenth Amendment Claim ..... 8

V. The Court Should Order Defendants to Provide All Evidence as Requested ..... 12

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Lab. Rels. Auth.*,
778 F.2d 850 (D.C. Cir. 1985) ... 12

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ... 11

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ... 3

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ... 6, 8

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ... 5

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) ... 5

*Guerrero-Lasprilla v. Barr*,
589 U.S. 221 (2020) ... 5

*Heath v. Alabama*,
474 U.S. 82 (1985) ... 10

*In re Elko Cty. Grand Jury*,
109 F.3d 554 (9th Cir. 1997) ... 7

*In re Neagle*,
135 U.S. 1 (1890) ... 4

*Kansas v. Garcia*,
589 U.S. 191 (2020) ... 11

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ... 5

*Printz v. United States*,
521 U.S. 898 (1997) ... 10

*Trump v. CASA*,
606 U.S. 831 (2025) ... 12

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) ... 8

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
45 F.4th 426 (D.C. Cir. 2022) ... 1

**STATUTES**

5 U.S.C. § 301 ... 5, 7, 11

5 U.S.C. § 551(1) ... 8

**<u>RULES AND REGULATIONS</u>**

6 C.F.R. § 5.41(a)(1) .......... 8
6 C.F.R. § 5.41(a)(2) .......... 8
6 C.F.R. § 5.41(d) .......... 8
19 C.F.R. § 103.21(a)(1) .......... 7
28 C.F.R. § 16.21(a)(2) .......... 7
28 C.F.R. § 16.21(c) .......... 11

**<u>OTHER AUTHORITIES</u>**

*Black's Law Dictionary* (12th ed. 2024) .......... 7

**ARGUMENT**

During Operation Metro Surge, the largest domestic federal immigration enforcement operation in history, federal officers shot three Minnesota residents. Two died. Rather than cooperate with state and local authorities to investigate and share evidence as they had for decades, Defendants Department of Justice and Department of Homeland Security blocked state and local authorities from evidence and then refused to turn that evidence over. Agency leadership, and even the Vice President, were clear about why: the shootings were a federal matter, and the State of Minnesota and prosecutors from Hennepin County had no business investigating deadly violence that occurred on the streets of Minneapolis. They are wrong. Plaintiffs have an obligation and a responsibility to investigate potentially criminal acts done in Minnesota regardless of the identity of the perpetrator.

Defendants' actions violated the Administrative Procedure Act (APA) and Tenth Amendment. Accordingly, Plaintiffs—the State of Minnesota, the Hennepin County Attorney, and the Superintendent of the Minnesota Bureau of Criminal Apprehension—sued, and Defendants scrambled, at times conceding that it was time to reverse course and share evidence and at other times looking for new explanations for a decision made months earlier. This is textbook arbitrary and capricious government action amid extraordinary facts—*all* of which Defendants accept as true by declining to dispute Plaintiffs' Statement of Undisputed Material Facts. *See* Fed. R. Civ. P. 56(e)(2).

In their opposition, Defendants have failed to respond to most of Plaintiffs' arguments and therefore have forfeited any answer. These uncontested points make this an unusually easy case. *See, e.g.*, *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 433–34 (D.C. Cir. 2022). Among other points, Defendants do not contest:

1. That the decision to bar Plaintiffs from accessing any evidence after the shootings was a final agency action that was done because Defendants decided that the investigations into the shootings were exclusively a "federal" matter, *see* Mot. Summ. J. at 6–15, 24–25; SUMF ¶¶ 16–19, 23–25, 28–31, 34–40, 44, 47–55, to punish "crooked" Minnesota officials, *see* Mot. Summ. J. at 9; SUMF ¶ 17, and shield federal officers from any accountability, SUMF ¶ 18;
2. That this decision was arbitrary and capricious, *see* Mot. Summ. J. at 28–31;
3. That all later explanations were impermissible *post hoc* rationalizations, *see id.* at 34–39;
4. That, separately, Defendants' decision to refuse to share evidence under the law enforcement sharing provision was arbitrary and capricious, *see id.* at 39–40;
5. That Defendants' stonewalling was a reversal of longstanding government practice, *see id.* at 3–4; SUMF ¶ 6–13.

And what Defendants do say comes up short. They argue that refusing to share evidence under the law enforcement sharing provisions is unreviewable, but they fundamentally misunderstand the APA and point to no evidence that Congress intended to shield such a decision from scrutiny. They also contend that the *Touhy* regulations only apply where there is an ongoing court proceeding. But they ignore that the text of the regulations sweeps much broader and overlook the absurd consequences that their reading would create when the demand comes from another sovereign rather than a private party. Finally, they misstate the uncontested facts on the Tenth Amendment claim and point to no source of federal law to support their preemption argument.

The federal government's behavior makes this case unprecedented, but these forfeitures, and Defendants' acceptance of Plaintiffs' Statement of Undisputed Material Facts, make it

straightforward. Defendants have already cycled through different bad faith, belated explanations for months. Their obstruction is intentional and designed to thwart Minnesota's ability to investigate violence that occurred within its borders. Plaintiffs are entitled to an order directing Defendants to turn over all withheld evidence and an injunction to stop future obstruction.

## I. The Decision to Bar Plaintiffs from Accessing Evidence Shortly after the Shootings Was Arbitrary and Capricious

Defendants' decision to block Plaintiffs from accessing evidence after the shootings was arbitrary and capricious—which Defendants do not dispute in any way—and, as a result, Plaintiffs request an order directing Defendants to provide the unlawfully withheld evidence, as outlined in the proposed order attached to their motion for summary judgment.

Defendants withheld from Plaintiffs evidence in all three shootings. Mot. Summ. J. at 7–15. As Defendants do not contest, that was a final agency action that was arbitrary and capricious for several reasons. *See id.* at 28–31. A few points bear repeating. Defendants' decision was based on the improper justification—provided in lockstep by federal officials—that gunning down Minnesota residents in Minnesota was an exclusively federal matter in which Minnesota had no interest. Mot. Summ. J. at 28–29; SUMF ¶¶ 16–19. Indeed, the U.S. Attorney's Office for the District of Minnesota—the federal prosecutors closest to these investigations—already concluded that "the best course for these investigations will be impartial and open sharing of information and evidence." SUMF ¶ 90. That determination was never repudiated on its merits; instead, cooperation was suspended due to "challenges with D.C." *Id.* at ¶ 105.

Defendants have never contested the fact that this was the real basis for their refusal to turn over evidence, *see* Mot. Summ. J. at 23, nor have they argued that it is improper to look to extra-record evidence in these circumstances, *see id.*; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). They have offered no defense of this rationale, let alone explained why

it justified blanket withholding and a departure from decades of intergovernmental evidence sharing. And of course, no such defense is available: It is for the judiciary to decide whether a federal officer is immune from state prosecution based on particular facts, *see In re Neagle*, 135 U.S. 1, 75 (1890), and the Executive Branch cannot pretermit that decision by withholding evidence that would form its basis, *see* Mot. Summ. J. at 29.[1]

## II. It Was Arbitrary and Capricious for Defendants to Refuse to Share Evidence under the Law Enforcement Sharing Provisions, and Defendants' Only Answer—that these Refusals Are "Exempt[]" from the APA—Is Wrong

Defendants also violated the APA when they arbitrarily refused to share information under their *Touhy* regulations' law enforcement sharing provisions. The undisputed facts confirm that Defendants have a long history of sharing evidence with Plaintiffs, including during investigations into the actions of federal law enforcement officers, Mot. Summ. J. 3–4, and that, after litigation ensued, they decided to share some evidence before reversing course, *id.* 20–21. As Plaintiffs explained in their motion for summary judgment, what little Defendants did say, including the wrongheaded assertion that Plaintiffs did not have a "need to know" the information they sought, ICE-AR 135, was a boilerplate list of objections that could not justify this U-turn, *see* Mot. Summ. J. at 39–40.

Defendants do not try to defend their decisionmaking on the merits. Instead, they insist that the decision is "exempt[]" from the APA for two reasons, neither of which holds water.

---

[1] Defendants also do not contest that DHS's March letter repeating its position that it was refusing to share evidence in the killing of Ms. Good was arbitrary and capricious. *See* Mot. Summ. J. at 31–33. Among other errors, the letter stated that DHS would simply "refer[]" the request to DOJ because that agency "is leading the investigation in the subject matter of [Plaintiffs'] demand." ICE-AR 119. The regulations do not contemplate such a referral. Additionally, using a purported DOJ investigation to wholesale deny access to any DHS evidence was unreasonable because some information was in DHS's control, like its own use of force policies and personnel files. Mot. Summ. J. at 32–33. And as discussed above, cooperation was the norm, so the existence of a concurrent federal investigation could not have justified wholesale withholding.

First, Defendants rehash their claim that their "decision to not disclose law enforcement information is committed to their discretion by law." Opp'n to Mot. Summ. J. at 1. Defendants fundamentally misunderstand the APA. *See* Mot. Summ. J. at 25–28. The exception for actions committed to agency discretion by law is "quite narrow[], restrict[ed] . . . to those rare circumstances where the relevant *statute* is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (internal quotation marks omitted) (emphasis added). So, the question is whether Congress, in drafting a statute, chose to preclude judicial review. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155–56 (2025). Defendants fail to cite any authority that supports such an argument or that would overcome the strong presumption of judicial review. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020). And Plaintiffs have previously explained that the Housekeeping Statute provides none. Mot. Summ. J. at 27 (discussing 5 U.S.C. § 301).

Second, Defendants contend that "DOJ's supposed 'flip flops' demonstrate the impossibility of adjudicating this dispute under the APA." Opp'n to Mot. Summ. J. at 9. But changing positions without explanation or acknowledgment of reliance interests is the classic example of an arbitrary exercise of power and abuse of discretion under the APA, not a reason that the APA does not apply. *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (changes in position must be acknowledged and explained). Defendants point to nothing to demonstrate a congressional intent to exempt their decisionmaking from the APA's requirement of rational decisionmaking. This alone requires summary judgment for Plaintiffs.

### III. The Proceedings-Only Rationale, Advanced for the First Time in June, Is an Impermissible *Post Hoc* Rationalization, but It Would Fail Even If the Court Could Consider It

Defendants do not contest that they withheld evidence to frustrate Plaintiffs from investigating and potentially prosecuting any wrongdoing by federal officers because Defendants wrongly assert that this is a wholly federal matter. *See infra* at 2–3. As discussed above, that decision was arbitrary and capricious. But it also undermines the only argument that Defendants offer in their opposition to summary judgment: That the reason Plaintiffs are not entitled to the requested evidence is because their letters did not request evidence in relation to ongoing "proceedings" or "litigation" and so could not be processed as *Touhy* demands. This rationale, offered in Defendants' June Letters *after* this lawsuit was filed and in Defendants' opposition, is a *post hoc* rationalization for the decision that Defendants concede that they had already made. Mot. Summ. J. at 34–35. And a late-breaking, "convenient litigating position[]" is further evidence of arbitrariness, not a defense to it. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020). Defendants "must defend [their] actions based on the reasons [they] gave when [they] acted," *id.* at 24, and this Court cannot entertain these new reasons now.

Even if the Court were to consider Defendants' belated explanation, Plaintiffs would be entitled to summary judgment. Defendants argue that the *Touhy* regulations only apply where there are adversarial *court* proceedings. Opp'n to Mot. Summ. J. at 1–5. But as Plaintiffs explained, Defendants' wooden reading makes little sense when looking at demands issued by other sovereigns, which, unlike private parties, can investigate and gather evidence outside of formal court proceedings. Mot. Summ. J. at 36–37. Defendants' regulations anticipate that private demands for information will come in connection with court proceedings because private parties generally lack the power to compel others without judicial process. But States are much different,

possessing all the attributes of sovereignty, including coercive investigative power.

On Defendants' view, states must subpoena federal authorities—despite their longstanding position that a state court cannot enforce subpoenas against federal authorities at all, which at least one circuit has embraced, *see In re Elko Cty. Grand Jury*, 109 F.3d 554, 555 (9th Cir. 1997)—or file criminal charges, potentially without access to all of the evidence, prior to seeking such evidence from the federal government. This is illogical. The federal government cannot force the states to change the processes that they use to investigate. And it would turn Defendants' *Touhy* regulations into a substantive barrier preventing disclosure to state and local law enforcement, which is directly contrary to the Housekeeping Statute, pursuant to which these regulations were promulgated. *See* 5 U.S.C. § 301 (statute "does *not* authorize withholding information from the public or limiting the availability of records to the public" (emphasis added)).

Defendants' interpretation of their regulations is not only illogical, but it also conflicts with the plain language of DOJ's and CBP's regulations. "Proceedings" is *not* a term that is limited to court proceedings, as Defendants themselves acknowledge. Opp'n to Mot. Summ. J. at 3. In context, it sweeps broadly to include administrative and other official business conducted by government bodies. *See, e.g.*, *Proceeding*, *Black's Law Dictionary* (12th ed. 2024) ("[t]he business conducted by a court *or other official body*" (emphasis added)). This is confirmed by the fact that the regulations expressly contemplate that *non-judicial* governmental authorities may demand information. 19 C.F.R. § 103.21(a)(1) (CBP regulation) ("in all federal, state, local, and foreign proceedings when a[n] . . . order, or demand . . . of a court, *administrative agency, or other authority* is issued for such information" (emphasis added)); 28 C.F.R. § 16.21(a)(2) (DOJ regulation) (applying procedures to disclosure of information "[i]n all federal and state proceedings in which the United States is not a party . . . when a subpoena, order, or other demand

. . . of a court *or other authority* is issued for such material or information" (emphasis added)).

Similar logic applies to DHS's regulation, which authorizes disclosure not only in response to broadly-defined "litigation," 6 C.F.R. § 5.41(a)(1) & (d), but *also* non-litigation "demands of . . . state judicial or quasi-judicial or administrative authority as well as state legislative authorities . . . whether civil or criminal in nature," 6 C.F.R. § 5.41(a)(2). Defendants' response appears to be that, even if DHS's regulation is not limited to court proceedings, Plaintiffs are "executive" rather than "administrative" authorities and therefore fall outside the regulation for that reason instead. Opp'n to Mot. Summ. J. at 3. This argument is easily dismissed. First, it was not previously raised by the agency, and there is no evidence that it was the basis on which the agency acted. Thus, it is the classic *post hoc* rationalization forbidden by the APA. *See Regents of the Univ. of Cal.*, 591 U.S. at 24. Second, Defendants offer nothing for their implicit contention that "executive" and "administrative" are mutually inconsistent categories. Under federal law, "executive" and "administrative" often refer to the same thing. *E.g., Trump v. Slaughter*, 146 S. Ct. 2283, 2301 (2026); *accord, e.g.*, 5 U.S.C. § 551(1) (applying the Administrative Procedure Act to virtually every Executive Branch unit). Plaintiffs may be considered an administrative authority for the purposes of the *Touhy* regulations.

## IV. Plaintiffs Are Entitled to Summary Judgment on Their Tenth Amendment Claim

Defendants' opposition offers no reason to withhold summary judgment on Plaintiffs' Tenth Amendment claim. As noted in Plaintiffs' motion for summary judgment and uncontested by Defendants, Defendants' interference with Plaintiffs' core sovereign powers went beyond simple inaction; they actively interfered with Plaintiffs' investigation, including by physically preventing the collection of evidence on Minnesota public streets and seizing that evidence for themselves. Mot. Summ. J. at 40–43. Defendants' obstruction has prevented Plaintiffs from

accessing important evidence relevant to ongoing criminal investigations into three shootings, including two killings, in Hennepin County. SUMF ¶ 112.

Defendants ask the Court to ignore the Tenth Amendment problem because, in their view, the intrusion on Plaintiffs' sovereign interests is minimal. Opp'n to Mot. Summ. J. at 10. That is factually wrong and legally irrelevant. First, citing a news article, Defendants assert that Plaintiffs now "already 'have all the evidence'" that they need. *Id.* (citing Philip Marcelo & Rebecca Boone, *Minnesota prosecutors obtain long withheld evidence in probe into fatal shootings of Good, Pretti*, PBS News (Jul. 13, 2026, 4:22 PM), https://www.pbs.org/newshour/nation/minnesota-prosecutors-obtain-long-withheld-evidence-in-probe-into-fatal-shootings-of-good-pretti)). This factual claim is false. Plaintiff Moriarty's declaration explains that, although Plaintiffs did receive some of the material they sought, "some information had been withheld." Moriarty Decl. ¶ 31. Plaintiff Evans explains that "[i]mportant evidence remains in the possession of the federal government and has not been shared." Evans Decl. ¶ 42. Plaintiffs' Statement of Undisputed Material Facts—which Defendants did not dispute—states that "the federal government has not shared several important pieces of evidence with Plaintiffs" and cites numerous examples of withheld evidence. SUMF ¶ 112; *see also id.* ¶ 109 (explaining that Plaintiffs' request to watch video evidence that has not been shared was denied). Defendants did not (and cannot) dispute these material facts with any evidence of their own, because Defendants' obstruction persists to this day.

Nor does the fact that Plaintiffs have so far brought one prosecution despite Defendants' attempted obstruction absolve the intrusion on Minnesota's sovereignty. Opp'n to Mot. Summ. J. at 10. It is true that Plaintiffs have *some* evidence related to the three shootings, and it may be possible to bring additional prosecutions based on that evidence. But that hardly means that

Defendants' continued withholding of other important evidence is harmless, as that evidence could inform and strengthen additional prosecutions. Plaintiffs need not establish that receiving additional evidence *will* lead to the prosecution of a "particular individual." *Id.* As DOJ should be aware, prosecutors must not choose their target and then look for evidence to support that decision. Rather, prosecutors follow the evidence. The purpose of Plaintiffs' investigation is to determine whether to prosecute, who to prosecute, and for what. It makes no sense to demand Plaintiffs prove a prosecution will be brought before allowing them access to the evidence that may inform that decision.

In any event, sovereignty is not measured by the number of prosecutions brought, and there is no tolerable level of intrusion into the State's "inviolable sovereignty." *Printz v. United States*, 521 U.S. 898, 919 (1997) (quoting The Federalist No. 39, at 245 (James Madison)). When the State's sovereignty is at stake, "no case-by-case weighing of the burdens or benefits is necessary." *Id.* at 935. Defendants' actions continue to interfere with Minnesota's core sovereign right to investigate potential violations of its criminal laws within its borders, *see Heath v. Alabama*, 474 U.S. 82, 93 (1985) ("Foremost among the prerogatives of sovereignty is the power to create and enforce a criminal code."), and their attempt to minimize this core affront to Minnesota's sovereignty fails.

Defendants are thus left to rehash their arguments that the Supremacy Clause preempts Plaintiffs' Tenth Amendment claim. Opp'n to Mot. Summ. J. at 11. Defendants argue that the Supremacy Clause "preempts any use of state process that requires the Federal Government to assist state law investigations contrary to its own statutes or regulations." *Id.* There are several problems with this argument. First, it misunderstands the facts: Defendants did not passively decline to assist a state law investigation, but actively obstructed the investigation by, for example,

blocking access to a crime scene and absconding with evidence. *E.g.*, SUMF ¶ 24 ("Defendants excluded BCA investigators from interviews, prevented them from following their standard investigative procedures, and blocked them from accessing key physical evidence."); *id.* ¶¶ 49–50 ("[f]ederal authorities then blocked the BCA from entering the area of the crime scene" and took evidence from the scene). Second, Defendants' theory presumes that sharing evidence is "contrary to [the federal government's] own statutes or regulations," but Defendants have identified no federal law that precludes the federal government from sharing any information (much less one that authorizes the federal government to actively disrupt state law enforcement functions). The only federal authorities Defendants have identified authorize *disclosure*, not obstruction. *E.g.*, 5 U.S.C. § 301 ("This section does not authorize withholding information from the public."); *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) (holding that the Housekeeping Act does not authorize substantive regulations with force of law). Defendants' reprise of their argument that Plaintiffs did not submit a *Touhy* request because there are no "proceedings" is wrong, as discussed *supra* at 5–7, and irrelevant: By their own terms, Defendants' regulations allow them to provide evidence to law enforcement without receiving a *Touhy* request at all. *E.g.*, 28 C.F.R. § 16.21(c) (allowing disclosure to law enforcement and prosecuting agencies "in the absence of a demand"). Without any law to point to, Defendants' preemption argument falls apart. *See, e.g.*, *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) ("There is no federal preemption *in vacuo*, without a constitutional text, federal statute, or treaty made under the authority of the United States." (internal quotation marks omitted)). The Court should grant summary judgment to Plaintiffs on this claim.

## V. The Court Should Order Defendants to Provide All Evidence as Requested

In these narrow and extraordinary circumstances, Plaintiffs request that the Court order Defendants to provide the withheld evidence, as detailed in the proposed order attached to Plaintiffs' motion for summary judgment, and enjoin further obstruction.

While remand may be appropriate under the APA in many instances, there is only one reasonable outcome here and so "the best course is for the reviewing court to simply apply the obvious result." *Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Lab. Rels. Auth.*, 778 F.2d 850, 862 n.19 (D.C. Cir. 1985).[2] That is especially true here where, unlike the mine run of APA cases, the delay is the harm and every day that Defendants withhold evidence risks spoliation and prevents Plaintiffs from carrying out their sovereign duties. Remand for a new decision or explanation would also be futile where Defendants have already attempted to "supplement" their explanation after litigation was filed by offering a pretextual explanation. Defendants have not contested any of the factual and legal arguments that Plaintiffs are entitled to this remedy under these circumstances, *see* Mot. Summ. J. at 43–44, and they should not be permitted to continue to obstruct Plaintiffs in their investigation through further delay.

Should the Court determine a remand is instead appropriate, any such remand should include a specific time period in which Defendants must act, with the Court retaining jurisdiction to "ensure compliance" with its order, as Defendants themselves concede would be appropriate. Opp'n to Mot. Summ. J. at 5 ("the best course of action would be to remand to the relevant agencies with instructions to ensure compliance").

* * *

[2] The Tenth Amendment claim provides an independent basis for the Court to issue injunctive relief. *See Trump v. CASA*, 606 U.S. 831, 851 (2025).

For the foregoing reasons, the Court should grant Plaintiffs summary judgment.

Dated: October 27, 2026

KEITH ELLISON
Attorney General
State of Minnesota

/s/ Peter J. Farrell
PETER J. FARRELL
Deputy Solicitor General
JOSEPH RICHIE
Special Counsel
KIMBERLY SVENDSEN
Special Counsel
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010 (Voice)
Peter.Farrell@ag.state.mn.us
Joseph.Richie@ag.state.mn.us
kimberly.svendsen@ag.state.mn.us

*Attorneys for Plaintiffs State of Minnesota and the Minnesota Bureau of Criminal Apprehension*

Respectfully Submitted,

MARY F. MORIARTY
Hennepin County Attorney

/s/ Morgan D. Kunz
SARAH E. DAVIS
MORGAN D. KUNZ
CLARE A. DIEGEL
HENNEPIN COUNTY ATTORNEY'S OFFICE
300 S. 6th Street
Minneapolis, MN 55487
(612) 348-5550
Sarah.Davis@hennepin.us
Morgan.Kunz@hennepin.us
Clare.Diegel@hennepin.us

/s/ Francis Swanson
KYLE R. FREENY (D.C. Bar No. 1684764)
JOSEPH MEAD (D.C. Bar No. 1724093)
NATHANIEL A.G. ZELINSKY (D.C. Bar No. 1724093)
SARAH ARMSTRONG*
FRANCIS SWANSON (D.C. Bar No. 90025765)
WASHINGTON LITIGATION GROUP
(202) 521-8750
1717 K Street NW
Washington, DC 20006
fswanson@washingtonlitigationgroup.org

/s/ Rupa Bhattacharyya
MARY MCCORD (D.C. Bar No. 427563)
RUPA BHATTACHARYYA (D.C. Bar No. 1631262)
JULIA GEGENHEIMER (D.C. Bar No. 90034692)
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown University Law Center 600 New Jersey Ave. NW
Washington, D.C. 20001

*Attorneys for Plaintiff Mary Moriarty, in her official capacity as Hennepin County Attorney*

**Admitted pro hac vice; admitted only in Massachusetts; practicing under the supervision of D.C. Bar members*